**PETROBRAS AMERICA, INC. and Certain Underwriters at Lloyd's, London and Insurance Companies Subscribing to Policy No. B0576/JM 12318, Plaintiffs,**

v.

**VICINAY CADENAS, S.A., Defendant.**

**Civil Action No. H–12–888.**

United States District Court,
S.D. Texas,
Houston Division.

Feb. 4, 2013.

Ileana M. Blanco, DLA Piper LLP, Houston, TX, for Plaintiff, Petrobras America, Inc.

George H. Lugrin, IV, Hall Maines Lugrin, P.C., Houston, TX, for Plaintiffs, Certain Underwriters at Lloyd's, London and Insurance Companies Subscribing to Policy No. B0576/JM 12318.

C. Mark Baker, Kevin O'Gorman, Andrea Fair, Fulbright Jaworski LLP, Houston, TX, for Defendant.

## *ORDER*

DAVID HITTNER, District Judge.

Pending before the Court is Defendant Vicinay Cadenas S.A.'s Motion to Stay Pending Arbitration Under Section 3 of the FAA, Defendant Vicinay Cadenas S.A.'s Motion for a Stay of Discovery and

Other Obligations Pending Resolution of Its Motion to Stay Pending Arbitration, and Plaintiffs' Motion for Leave to Amend Complaint. After considering the motions, submissions, and applicable law, the Court finds that Defendant's motions should be denied and Plaintiffs' motion should be granted.

## I. BACKGROUND

### A. Factual Background

This case arises from two separate contracts between three different entities. Two of those entities are parties in this suit. The first contract is between Plaintiff Petrobras America, Inc. ("Petrobras")[1] and Technip USA Inc. ("Technip"), which is not a party in this action. Under the first contract, Petrobras contracted with Technip for the engineering, procurement, construction, and installation of a set of free-standing hybrid risers for Petrobras's floating oil and gas production facility in the Gulf of Mexico.

The second contract is between Technip and Vicinay Cadenas, S.A. ("Vicinay"), which is the Defendant in this suit. The contractual relationship between Technip and Vicinay is governed by a Purchase Order ("Purchase Order"), which contains an arbitration clause that is the subject of the present dispute.[2] Under the terms of the Purchase Order, Vicinay agreed to engineer and manufacture five tether chains that would connect a portion of the risers in Petrobras's production facility to buoyancy cans near the ocean's surface that keep the riser assembly in place. Petrobras is not a signatory to the Purchase Order. There is no contract between Petrobras and Vicinay.

On March 23, 2011, Petrobras discovered that a buoyancy can had broken free from its connection to the riser assembly, and a portion of the riser assembly and tether chain had fallen to the ocean floor. According to Petrobras, as a result of the tether chain's failure, Petrobras was forced to suspend all oil and gas development operations in the affected fields. Petrobras claims that a link in the tether chain failed due to unauthorized and defective repair welds made by Vicinay during the chain's manufacturing.

### B. Procedural Background

On March 23, 2012, Plaintiffs commenced the present action in this Court. Plaintiffs' Complaint ("Complaint") asserts four causes of action against Vicinay: (1) negligence; (2) gross negligence; (3) products liability; and (4) breach of implied warranty. Vicinay has moved to stay these proceedings pending the completion of arbitration. Plaintiffs have moved for leave to amend their Complaint.

---

1. Petrobras is one of multiple plaintiffs in this suit, along with Certain Underwriters at Lloyd's, London and Insurance Companies subscribing to Policy No. B0576/JM 12318 (collectively, "Underwriters"; together with Petrobras, "Plaintiffs"). The Underwriters are underwriting syndicates that have subscribed to an insurance policy previously issued to Petrobras. The insurance policy provides coverage to Petrobras for certain losses related to Petrobras's oil and gas production operations in the fields related to this suit. The Underwriters are severally and proportionately subrogated to the claims pled by Petrobras. *Complaint* at 1–2, ¶ 2.

2. The clause reads, in pertinent part, "Any dispute or difference of any kind which shall arise between Buyer and Seller in connection with the Purchase Order shall, if not settled by agreement between the parties, be settled by arbitration in Houston, Texas, administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules." *Defendant Vicinay Cadenas S.A.'s Reply in Support of Its Motion to Stay Pending Arbitration Under Section 3 of the FAA,* Exhibit 1 at 1 (*Purchase Order General Conditions*).

At the heart of the present dispute is Vicinay's contention that the Purchase Order's arbitration clause should apply to compel arbitration of Plaintiffs' claims.[3] Vicinay argues that, despite Petrobras not being a named party in the Purchase Order, Plaintiffs' claims are premised in part on the Purchase Order, and therefore, estoppel applies to stay these proceedings in favor of arbitration. According to Vicinay, Plaintiffs' attempt to amend their Complaint is an attempt to avoid arbitration. Plaintiffs, conversely, seek amendment to clarify the claims in their Complaint, arguing that estoppel should not apply to compel arbitration because their claims are grounded in pre-purchase representations and legally imposed obligations, rather than the Purchase Order.

## II. LAW & ANALYSIS

### A. Request to Amend

■ "Plaintiffs seek to amend their Complaint to further clarify the basis of Plaintiffs' claims."[4] According to Plaintiffs, leave to amend should be granted because it would not cause any undue delay in this action, they are not acting in bad faith or with dilatory motive, this is their first request for leave to amend, Vicinay will not suffer any prejudice from amendment, and the amendment would clarify "any misunderstanding[s] regarding the nature of Plaintiffs' claims."[5] Vicinay counters that Plaintiffs are trying to avoid arbitration by amending their Complaint: "[g]iven the Federal Arbitration Act's ... strong national policy favoring arbitration, the Court should not permit an amendment for which the sole purpose is avoiding arbitration."[6]

■ Federal Rule of Civil Procedure 15(a) allows a party to amend its pleading after 21 days from the date of service "only with the opposing party's written consent or the court's leave." FED. R.CIV.P. 15(a)(2). Courts are required to "freely give leave [to amend] when justice so requires." *Id.* However, "[w]hether to grant leave to amend a complaint 'is entrusted to the sound discretion of the district court.'" *Ballard v. Devon Energy Prod. Co.,* 678 F.3d 360, 364 (5th Cir.2012) (quoting *Lozano v. Ocwen Fed. Bank, FSB,* 489 F.3d 636, 644 (5th Cir.2007)). Because the language of Rule 15 "evinces a bias in favor of granting leave to amend," *Torch Liquidating Trust v. Stockstill,* 561 F.3d 377, 391 (5th Cir.2009) (quoting *Southmark Corp. v. Schulte Roth & Zabel,* 88 F.3d 311, 314 (5th Cir.1996)) (internal quotation marks omitted), "[a] district court must possess a 'substantial reason' to deny a request for leave to amend." *Smith v. EMC Corp.,* 393 F.3d 590, 595 (5th Cir.2004) (quoting *Lyn–Lea Travel Corp. v. Am. Airlines,* 283 F.3d 282, 286 (5th Cir.2002)). Courts within the Fifth Circuit examine five factors to determine whether leave to amend should be granted: "1) undue delay, 2) bad faith or dilatory motive, 3) repeated failure to cure deficiencies by previous amendments, 4) undue prejudice to the opposing party, and 5) futility of the amendment." *Id.* "Absent any of these factors, the leave sought should be 'freely given.'" *Id.* (quoting *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)).

Vicinay argues that "[c]ourts have recognized that ... selective amendments aimed at escaping arbitration are improp-

---

**3.** Vicinay specifically requests the Court to stay the proceedings in favor of an arbitrator determining arbitration, though the substance of its argument is largely that Plaintiffs are bound to arbitration by the Purchase Order's arbitration clause.

**4.** *Motion for Leave to Amend Complaint* at 3.

**5.** *Motion for Leave to Amend Complaint* at 4.

**6.** *Defendant Vicinay Cadenas S.A.'s Response to Plaintiffs' Motion for Leave to Amend Complaint* at 1–2.

er."[7] In support, Vicinay cites extensively to *Wimm v. Jack Eckerd Corp.*, in which the Fifth Circuit affirmed the district court's denial of the plaintiffs' motion to amend their complaint. *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 141–42 (5th Cir. 1993). *Wimm* is distinguishable from the present action.[8]

*Wimm* arose from the death of an eleven-year-old boy following his ingestion of two tablespoons of a codeine-based cough syrup in several different doses. *Id.* at 138. His parents brought suit against the syrup's retail drugstore, alleging claims grounded in negligence and products liability. *Id.* According to the plaintiffs, although the child's prescription had called for two teaspoons of the syrup, the cough syrup bottle's label indicated two tablespoons as the proper dosage. *Id.* Following the plaintiffs' first amended complaint, the defendants filed a motion for summary judgment, prompting the plaintiffs to subsequently move the court for leave to file a second amended complaint, seeking to add two new claims of negligent mislabeling and violations of the Deceptive Trade Practices Act. *Id.* at 138–39.

The district court denied the plaintiffs' motion for leave to amend, reasoning that amendment would be futile and that the motion was filed in bad faith and with dilatory motive. *Id.* at 139. On appeal, the Fifth Circuit affirmed, agreeing with the district court that the plaintiffs were seeking to add multiple claims in an "obvious[ ] . . . attempt to avoid summary judgment." *Id.* at 139–40. According to the Fifth Circuit, "[t]he plaintiffs knew of the facts underlying their mislabeling claim before [the] action commenced." *Id.* at 140. Just "[a] few months" after the child's death, his mother executed an affidavit in which she testified to giving the child two tablespoons of the cough syrup "according to the medicine bottle." *Id.* The suit was filed approximately twenty months following the execution of the affidavit, and plaintiffs did not assert a claim for mislabeling until nine months after the commencement of the suit. *Id.* at 140.

Unlike in *Wimm*, Plaintiffs in the present action do not seek to add multiple new claims.[9] On the contrary, Plaintiffs seek leave to amend for the purpose of "clari[ying] any misunderstanding regarding the nature of Plaintiffs' claims."[10] In particular, Plaintiffs seek to alter several paragraphs cited by Vicinay as evidence of Plaintiffs' reliance on the Purchase Order in forming the basis of their suit. In support of their motion, Plaintiffs attach the Declaration of Robert Carter ("Carter"), a consultant employed to work on Petrobras's behalf as part of its oil and gas development in the Gulf of Mexico. Car-

**7.** *Defendant Vicinay Cadenas S.A.'s Response to Plaintiffs' Motion for Leave to Amend Complaint* at 2.

**8.** As is *Corporate Relocation, Inc. v. Martin*, also cited by Vicinay. *Martin* is a 2006 case from the Northern District of Texas in which the court denied the plaintiff's motion for leave to file an amended complaint and granted the defendant's motion to compel arbitration. *See Corporate Relocation, Inc. v. Martin*, No. 3:06–CV–232, 2006 WL 4101944, at *5 (N.D.Tex. Sept. 12, 2006). In *Martin*, the court based its decision largely on the plaintiff's failure to file for leave to amend until after a magistrate judge had already issued a recommendation to the district court to compel arbitration. *Id.* at *5–6. The court reasoned that such a "tactical maneuver," in which the plaintiff sought to add *six* new claims, constituted undue delay. *Id.*

**9.** Plaintiffs similarly do not seek to add new parties. *Cf. Barrett v. Indep. Order of Foresters*, 625 F.2d 73, 75 (5th Cir.1980) (affirming the district court's denial of a plaintiff's motion for leave to amend because the plaintiff sought to add both additional claims and new parties).

**10.** *Motion for Leave to Amend Complaint* at 4.

ter's Declaration—combined with Plaintiffs' motion—explains that the basis for Plaintiffs' claims is grounded in pre-purchase representations by Vicinay and obligations imposed by law, not in the Purchase Order.[11] As part of the Amended Complaint ("Amended Complaint"), Plaintiffs do seek to add one claim by replacing their breach of implied warranty claim with a failure to warn claim. However, as distinguished from *Wimm*, Plaintiffs' motion was not filed with the intention of defeating a pending motion for summary judgment.[12] And unlike in *Wimm*, Plaintiffs' amendment in this case would not be futile. In *Wimm*, the court determined that amendment to add a mislabeling claim would be futile due to its determination that the child "did not receive a toxic dose of the cough syrup"—a determination that undermined the entire basis for the amended complaint. *Id.* at 139–40. On the contrary, amendment in this case would clarify the basis for Plaintiffs' claims as grounded in pre-purchase misrepresentations and legally imposed obligations, rather than the Purchase Order. Moreover, while the plaintiffs in *Wimm* had already been granted leave to amend their complaint once, Plaintiffs in this action have not previously sought leave to amend. *Id.* at 138.

Even if the facts of this case were closely analogous to those in *Wimm*, *Wimm's* central holding (as cited by Vicinay) has not been expressly affirmed by any subsequent opinions of the Fifth Circuit.[13] Indeed, many of the federal court cases that have cited to *Wimm's* central holding have largely done so by distinguishing it on the facts.[14]

11. *Motion for Leave to Amend Complaint*, Exhibit B at 2 (*Declaration of Robert Carter*) [hereinafter *Carter Declaration*].

12. *See also Rimkus Consulting Grp. v. Cammarata*, 257 F.R.D. 127, 135 (S.D.Tex.2009) (Rosenthal, J.) ("In the present case, the motion was not filed after, and to try to defeat, a pending motion for summary judgment. Cammarata does not seek to add new parties. Although Cammarata's excuse for the delay is 'less than compelling,' adding the counterclaim will not substantially delay the suit because it involves the same transaction or occurrence as the claims at issue.").

13. *Wimm* is widely cited by the Fifth Circuit (as well as district courts within the Fifth Circuit) for its enunciation of the appropriate standard of review on appeal for reviewing district courts' denials of motions to amend (abuse of discretion), as well as its statement of the five factors that courts within the Fifth Circuit employ to determine whether leave to amend should be granted. *See, e.g., Quintanilla v. Tex. Television Inc.*, 139 F.3d 494, 499 n. 21 (5th Cir.1998); *PYCA Indus., Inc. v. Harrison Cnty. Waste Water Mgmt. Dist.*, 81 F.3d 1412, 1420 (5th Cir.1996). In *Starling v. Fuller* (an unpublished 1995 decision), the Fifth Circuit did analogize to *Wimm's* general reasoning that "awareness [of the underlying facts] supported a finding of bad faith and dilatory motive." *Starling v. Fuller*, No. 93–8031, 1995 WL 783343, at *2 (5th Cir. Apr. 5, 1995), *withdrawn*, 49 F.3d 1092. However, the court did not rely on *Wimm's* discussion of the timing of the plaintiffs' motion for leave (filed just nine months into the suit), which is one of the primary analogies that Vicinay draws. *See Defendant Vicinay Cadenas S.A.'s Response to Plaintiffs' Motion for Leave to Amend Complaint* at 4 ("Here, like in *Wimm*, the timing of Plaintiffs' motion evidences their motive in seeking the amendment."). Moreover, *Starling* was itself subsequently "withdrawn from the bound volume [of the Federal Reporter] at the request of the [Fifth Circuit]." *Starling v. Fuller*, 49 F.3d 1092 (5th Cir.1995).

14. *See Arthur v. Maersk, Inc.*, 434 F.3d 196, 204–05 (3d Cir.2006) (finding a lack of undue delay when the plaintiff sought leave to amend less than a year after filing suit); *Hamilton v. First Am. Title Co.*, No. 3:07–CV–1442–G, 2008 WL 3876038, at *2 (N.D.Tex. Aug. 15, 2008) ("The defendant also directs the court's attention to *Wimm* .... [However,] [t]he defendant again fails to note that the motion for leave to amend in *Wimm* was filed in response to a summary judgment motion [and] the district court had already granted leave to file a first amended complaint."); *DT*

Vicinay additionally argues that "[e]ven stronger reasoning applies here than in *Wimm*" to deny Plaintiffs' motion for leave to amend, because in the present action, "Plaintiffs seek to avoid 'a strong national policy favoring arbitration'" by amending their Complaint.[15] However, the Fifth Circuit has explained that the "federal policy favoring arbitration does not apply to the determination of whether there is a valid agreement to arbitrate between the parties; instead '[o]rdinary contract principles determine who is bound.'" *Fleetwood Enters., Inc. v. Gaskamp,* 280 F.3d 1069, 1073 (5th Cir.2002) (alteration in original) (quoting *Daisy Mfg. Co. v. NCR Corp.,* 29 F.3d 389, 392 (8th Cir.1994)).

The Court thus concludes that the five factors utilized by the Fifth Circuit in weighing whether to grant leave to amend do not counsel against granting Plaintiffs' motion. Amendment would not cause undue delay, as the case had been on the Court's docket for barely eight months at the time Plaintiffs filed their motion, the Court has not yet issued a Rule 16 scheduling order, and no discovery has yet occurred. Furthermore, as distinguished from *Wimm*, Plaintiffs here are not acting in bad faith or with dilatory motive—they do not seek to avoid the summary dismissal of their action on the merits by this motion. This is Plaintiffs' first request for leave to amend, which does not cause undue prejudice to Vicinay, and cannot be characterized as futile. For these reasons,

Plaintiffs' motion for leave to amend is granted.

**B. Who Determines Arbitration ?**

█ Before examining Vicinay's motion to compel arbitration, the Court will first address Vicinay's argument that the question of arbitration itself is more appropriately adjudicated by an arbitrator than by this Court. Vicinay argues that, because the arbitration agreement contained in the Purchase Order "specifically incorporates the [American Arbitration Association] rules[,] ... [which] provide that the arbitrator will decide the issue of arbitrability," the Court should stay this action in favor of arbitration, "including the initial determination of whether this dispute is subject to and governed by the arbitration agreement."[16]

█ "It is well settled in both commercial and labor cases that whether parties have agreed to 'submi[t] a particular dispute to arbitration' is typically an 'issue for judicial determination.'" *Granite Rock Co. v. Int'l Brotherhood of Teamsters,* — U.S. ——, 130 S.Ct. 2847, 2855, 177 L.Ed.2d 567 (2010) (alteration in original) (quoting *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 83, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002)). "It is similarly well settled that where the dispute at issue concerns contract formation, the dispute is generally for courts to decide." *Id.* at 2855–56 (citing *First Options of Chi., Inc. v. Kaplan,* 514 U.S. 938, 944, 115 S.Ct.

---

*Apartment Grp., LP v. CWCapital, LLC,* No. 3:12–CV–0437–D, 2012 WL 4740488, at *3 (N.D.Tex. Oct. 3, 2012) (distinguishing the bad faith present in *Wimm* and declining to deny the plaintiffs' motion for leave); *Ashley Furniture Indus., Inc. v. Am. Signature, Inc.,* No. 2:11–cv–427, 2012 WL 1031411, at *3 (S.D.Ohio Mar. 27, 2012) (characterizing *Wimm* as "unpersuasive" in light of the facts before the court); *Rimkus,* 257 F.R.D. at 135 (distinguishing the significant prejudice that would have attached to the defendant under

the facts of *Wimm* and granting the defendant's motion for leave to amend to assert a counterclaim).

**15.** *Defendant Vicinay Cadenas S.A.'s Response to Plaintiffs' Motion for Leave to Amend Complaint* at 5 (quoting *Wash. Mut. Fin. Grp., LLC v. Bailey,* 364 F.3d 260, 263 (5th Cir.2004)).

**16.** *Defendant Vicinay Cadenas S.A.'s Motion to Stay Pending Arbitration Under Section 3 of the FAA* at 11.

1920, 131 L.Ed.2d 985 (1995)). Courts "will not assume that the parties agreed to arbitrate arbitrability '[u]nless the parties clearly and unmistakably provide otherwise.'" *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir.2012) (alteration in original) (quoting *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986)).

■■■ The parties in the present action have not "clearly and unmistakably" agreed to arbitrate arbitrability. "Under [Supreme Court precedent], whether or not [a] company [is] bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the Court on the basis of the contract entered into by the parties." *AT & T Techs., Inc.*, 475 U.S. at 649, 106 S.Ct. 1415 (quoting *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 546–47, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964)). Applied to this matter, Petrobras and Vicinay did not enter into a contract— Petrobras is not a signatory to the Purchase Order that contains the arbitration provision Vicinay seeks to enforce.

Vicinay cites to *Petrofac, Inc. v. DynMc-Dermott Petroleum Operations Co.* as support for its argument that application of the American Arbitration Association rules in the Purchase Order necessitates the arbitration of arbitrability. But in *Petrofac*, "the parties expressly incorporated into *their* arbitration agreement the AAA Rules." *Petrofac*, 687 F.3d at 675 (emphasis added). Here, unlike in *Petrofac*, the precise issue is whether to even apply the contract containing the arbitration clause—a contract to which Petrobras is a non-signatory. Unlike in *Petrofac*, Petrobras has not expressly assented to the incorporation of the AAA Rules into an arbitration agreement—there is no express agreement between Petrobras and Vicinay that could even give rise to such an express incorporation. Moreover, as Plaintiffs correctly argue, in the recent Fifth Circuit cases applying direct-benefits estoppel that the parties cite, the district courts adjudicated the question of arbitration, rather than the arbitrators.[17] Because Petrobras and Vicinay have not "clearly and unmistakably" agreed to arbitrate the issue of arbitrability, the Court will determine the question of arbitrability.

### C. Motion to Stay Pending Arbitration

■■■ Vicinay seeks to stay this action until arbitration is complete. According to Vicinay, Plaintiffs' suit is "[p]remised in [p]art on Vicinay's [c]ontract with Technip,"[18] which contains a mandatory arbi-

---

17. *See Response to Motion to Stay Pending Arbitration* at 5; *Noble Drilling Servs., Inc. v. Certex USA, Inc.*, 620 F.3d 469, 472 (5th Cir. 2010) ("The district court found that Noble was bound to arbitrate its claims because its claims were premised on Bridon's failure to perform according to the terms of the Purchase Order Agreements and that Noble received a direct benefit from those orders."); *Hellenic Inv. Fund, Inc. v. Det Norske Veritas*, 464 F.3d 514, 517 (5th Cir.2006) ("[T]he district court determined that Hellenic was bound by the terms of DNV's Rules and dismissed the action."); *Bridas S.A.P.I.C. v. Gov't of Turkm.*, 345 F.3d 347, 354 (5th Cir.2003) ("The district court, because it did not find 'clear and unmistakable' evidence that the parties agreed that the Tribunal would determine its own jurisdiction, undertook an inde-

pendent review of whether the Government was bound to arbitrate with Bridas.").

18. *Defendant Vicinay Cadenas S.A.'s Motion to Stay Pending Arbitration Under Section 3 of the FAA* at 4. To invoke the Purchase Order's arbitration clause, Vicinay argues that "[t]he dispute need not [even] arise out of the contract ... [but] instead, the dispute need only ... 'relate to' or be 'connected with' the contracts. Any doubt 'concerning the arbitrability of claims should be resolved in favor of arbitration.'" *Id.* at 12 (quoting *Wash. Mut. Fin. Grp.*, 364 F.3d at 263). According to Vicinay, because of the "strong national policy favoring arbitration of disputes, ... all doubts concerning the arbitrability of claims should be resolved in favor of arbitration." *Id.* at 6 (quoting *Wash. Mut. Fin. Grp.*, 364

tration clause. Vicinay further argues that the parties agreed to arbitrate this dispute—"Plaintiffs agreed to be bound to the arbitration agreement by filing their lawsuit based on the [Purchase Order]." [19]

 "[A]rbitration agreements apply to nonsignatories only in rare circumstances." *Hellenic Inv. Fund, Inc. v. Det Norske Veritas*, 464 F.3d 514, 517 (5th Cir.2006) (quoting *Bridas S.A.P.I.C. v. Gov't of Turkm.*, 345 F.3d 347, 358 (5th Cir.2003)) (internal quotation marks omitted). Nevertheless, federal courts have held that "so long as there is some written agreement to arbitrate, a third party may be bound to submit to arbitration. Ordinary principles of contract and agency law may be called upon to bind a nonsignatory to an agreement whose terms have not clearly done so." *Bridas*, 345 F.3d at 355–56 (citation omitted). Direct-benefits estoppel is one theory by which non-signatories may be bound to arbitrate. *Hellenic*, 464 F.3d at 517–18. Direct-benefits estoppel applies to "non-signatories who, during the life of the contract, have embraced the contract despite their non-signatory status but then, during litigation, attempt to repudiate the arbitration clause in the contract." *Id.* (quoting *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 200 (3d Cir.2001)) (internal quotation marks omitted). "A non-signatory can 'embrace' a contract containing an arbitra-

tion clause in two ways: (1) by knowingly seeking and obtaining 'direct benefits' from that contract; or (2) by seeking to enforce the terms of that contract or asserting claims that must be determined by reference to that contract." *Noble Drilling Servs., Inc. v. Certex USA, Inc.*, 620 F.3d 469, 473 (5th Cir.2010).

 Direct-benefits estoppel is inapplicable to the present case. To satisfy the first possible alternative of direct-benefits estoppel, a demonstration that the non-signatory had actual knowledge of the terms of the arbitration agreement is required. *Noble Drilling*, 620 F.3d at 473–74. Even if it might be inferred that Petrobras knew of the Purchase Order's existence, there is no evidence that Petrobras had actual knowledge of the *terms* of the Purchase Order. Plaintiffs present evidence to the contrary in the form of the Declaration of Robert Carter. Carter states that "Technip did not disclose to [Petrobras] the commercial terms by which Technip purchased the chains from Vicinay." [20] Vicinay speculates that actual knowledge is evidenced by the facts underlying the action: "Petrobras wants this Court to believe that it hired Technip for several hundred million dollars to design and engineer the free standing hybrid riser systems, and turned over full control to Technip, without knowledge of the contractual terms on which Technip would procure component parts." [21] However, such

---

F.3d at 263). However, "[a]lthough ambiguities are generally resolved in favor of arbitration, 'this policy may only be used to tip the balance ... when determining the scope of the arbitration agreement—not when determining whether an arbitration agreement exists.'" *Global Oil Tools v. Barnhill*, No. 12–1507, 2012 WL 4928912, at *4 (E.D.La. Oct. 16, 2012) (quoting *BMA Fin. Servs., Inc. v. Guin*, 164 F.Supp.2d 813, 818 (W.D.La. 2001)). Moreover, the Supreme Court "[has] never held that [the presumption favoring arbitrability] overrides the principle that a court may submit to arbitration only those disputes

... that the parties have agreed to submit." *Granite Rock*, 130 S.Ct. at 2851 (citation omitted) (internal quotation marks omitted).

19. *Defendant Vicinay Cadenas S.A.'s Motion to Stay Pending Arbitration Under Section 3 of the FAA* at 6.

20. *Carter Declaration, supra* note 11, at 2.

21. *Defendant Vicinay Cadenas S.A.'s Reply in Support of Its Motion to Stay Pending Arbitration Under Section 3 of the FAA* at 3.

speculation is not evidence of actual knowledge. *See id.* ("Because no evidence supports a conclusion that Noble knew of the *terms* of the Purchase Order Agreements, Noble could not have the knowledge necessary to support the 'knowingly exploited' theory of direct benefits estoppel." (emphasis added)).

As to the second possible alternative for application of direct-benefits estoppel, Plaintiffs' claims are not dependent on reference to the Purchase Order—they are not based on express warranties contained in the Purchase Order, as Vicinay argues. Plaintiffs' Original Complaint contains claims for negligence, gross negligence, products liability, and breach of implied warranty. Vicinay points to six primary paragraphs in the Complaint that it argues demonstrate Plaintiffs' reliance on the Purchase Order: ¶ 17 ("Vicinay warranted that the chains would conform strictly to contract specifications...."); ¶ 18 ("Vicinay warranted that the chains would be free from defects in materials and workmanship...."); ¶ 32 ("[B]y selling and delivering a chain that was new, not defective, not repaired, and in conformity with specifications ..., Vicinay willfully ... failed to exercise due care and/or diligence...."); ¶ 36 ("[T]he chain did not conform to the express and/or implied warranties made by Vicinay."); ¶ 38 ("[T]he chain deviated in a material way from the specifications or performance standards for the chain...."); ¶ 41 ("[T]he chain did not conform to express and implied warranties made by Vicinay.").[22] However, these claims are grounded not in the Purchase Order, but in representations made by Vicinay to Petrobras (as described in the Carter Declaration). As enunciated in the Amended Complaint, Plaintiffs' claims are "grounded in improper weld-overs performed by Vicinay when the tether chain was being manufactured, and in Vicinay's failure to adhere to the no weld-over representations made directly to Petrobras outside and independent of the Technip–Vicinay Purchase Order."[23] Plaintiffs' Amended Complaint is supported by Carter's Declaration, in which Carter states that, upon Petrobras's insistence, "Vicinay emphatically agreed that [it] would not weld at all on any chain link ... [and] expressly represented ... that if any material defects were identified in any links, the entire chain would be scrapped and a new chain fully manufactured."[24] The available evidence thus indicates that Vicinay's representations to Petrobras, rather than any express terms of the Purchase Order, form the basis of Plaintiffs' claims against Vicinay.

Vicinay relies heavily on the Fourth Circuit's decision in *International Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, in which the court affirmed the district court's order enforcing an arbitration award. *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 413–14 (4th Cir.2000). However, the facts of *International Paper* distinguish it from the present action. In *International Paper*, the court, in affirming the enforcement of an arbitration award, concluded that the manufacturing contract to which the plaintiff purchaser was not a signatory "provide[d] part of the factual foundation for every claim asserted." *Id.* at 418. On the contrary, in this case, the Purchase Order does not provide part of the factual foundation for the claims asserted—Petrobras's entire case does not hinge on any expressly asserted rights un-

---

**22.** *Complaint* at 4, 7–9, ¶¶ 17, 18, 32, 36, 38, 41; *Defendant Vicinay Cadenas S.A.'s Motion to Stay Pending Arbitration Under Section 3 of the FAA* at 4–5.

**23.** *Response to Motion to Stay Pending Arbitration* at 7–8.

**24.** *Carter Declaration, supra* note 11, at 2–3.

der the Purchase Order. Moreover, the plaintiff's primary claim in *International Paper* was for breach of contract, whereas Plaintiffs in this action have not brought a breach of contract claim; instead, they base their claims on tort law. *Id.* at 414.

The Fifth Circuit case of *Noble Drilling Services, Inc. v. Certex USA, Inc.* is more on point. *Noble Drilling* involved two separate contracts. Plaintiff Noble Drilling Services ("Noble") purchased a set of new wire ropes from Defendant Certex USA, Inc. ("Certex") under a contract that did not contain an arbitration clause. *Noble Drilling*, 620 F.3d at 471. Certex subcontracted with Bridon International, Ltd. ("Bridon") for the manufacturing of the wire ropes in accordance with a set of purchase order agreements that did contain arbitration clauses and to which Noble was not a signatory. *Id.* Following the alleged failure of the ropes, Noble brought suit against Certex based on its contract and against Bridon based on claims grounded in negligence and warranty. *Id.* at 472. Following the District Court's granting of the defendants' motion to compel arbitration based on a theory of direct-benefits estoppel, Noble appealed, and the Fifth Circuit reversed. *Id.* According to the Fifth Circuit, direct-benefits estoppel was inapplicable because: (1) there was no evidence that Noble had any knowledge of the terms of the purchase order agreements; and (2) Noble asserted that none of its claims were based on the purchase order agreements, but instead were based on the pre-purchase representations of Defendants or obligations imposed by law. *Id.* at 474–75. Based on the Fifth Circuit's reasoning in *Noble Drilling*, when a plaintiff sues a manufacturer with which it lacks contractual privity, does not base its claims on the manufacturer's contract with the distributor, disclaims any reliance on such a contract, and relies instead and entirely on the pre-purchase representations of the defendant and whatever legal duties are imposed on a manufacturer by the law, the second alternative prong of direct-benefits estoppel does not apply.

Because the evidence does not indicate that Petrobras had actual knowledge of the Purchase Order's terms, Plaintiffs do not base their claims on the Purchase Order, have disclaimed any reliance on the Purchase Order, and rely entirely on claims based on pre-purchase representations and legally imposed duties, the Court declines to apply direct-benefits estoppel to this action. Accordingly, Vicinay's motion to stay pending arbitration is denied.[25]

## III. CONCLUSION

Accordingly, the Court hereby

**ORDERS** that Defendant Vicinay Cadenas S.A.'s Motion to Stay Pending Arbitration Under Section 3 of the FAA is **DENIED.** The Court further

**ORDERS** that Defendant Vicinay Cadenas S.A.'s Motion for a Stay of Discovery and Other Obligations Pending Resolution of Its Motion to Stay Pending Arbitration is **DENIED.** The Court further

**ORDERS** that Plaintiffs' Motion for Leave to Amend Complaint is **GRANTED.**

25. Vicinay's motion for a stay of discovery hinges largely on the court's resolution of its motion to stay pending arbitration in Vicinay's favor. The Court has denied Vicinay's motion to stay pending arbitration and accordingly likewise denies Vicinay's motion to stay discovery.