# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

——————

No. 14-20554

——————

United States Court of Appeals
Fifth Circuit

**FILED**
February 18, 2015

Lyle W. Cayce
Clerk

In re:  LLOYD'S REGISTER NORTH AMERICA, INCORPORATED,

Petitioner.

——————

Petition for a Writ of Mandamus to
the United States District Court
for the Southern District of Texas

——————

Before SMITH, ELROD, and HIGGINSON, Circuit Judges.

PER CURIAM:

Lloyd's Register North America, Inc. ("LRNA"), was the classification society responsible for certifying a ship that Irving Shipbuilding, Inc. ("Irving"), was building for Pearl Seas Cruises, LLC ("Pearl Seas").  Pearl Seas was dissatisfied with the ship and engaged in several years of arbitration and litigation with Irving.  After those proceedings had concluded, Pearl Seas sued LRNA under various tort theories regarding LRNA's allegedly inadequate performance in certifying the ship and its alleged misdeeds during arbitration.

LRNA moved to dismiss on the ground of *forum non conveniens* ("FNC"), claiming that a forum-selection clause in the Lloyd's Register Rules and

No. 14-20554

Regulations for the Classification of Ships (the "LR Rules") and in the contract between LRNA and Irving required Pearl Seas to bring the claims in England. The district court denied the motion to dismiss without written or oral explanation. LRNA petitions for a writ of mandamus to order the court to vacate its denial and dismiss for FNC. Because the district court clearly abused its discretion and reached a patently erroneous result, and because LRNA has no way effectively to vindicate its rights without a writ of mandamus, we grant the petition.

I.

The following facts are taken from Pearl Seas' First Amended Complaint unless otherwise noted. Pearl Seas and LRNA communicated in 2006 about LRNA's potentially providing classification services for the vessels Pearl Seas would be operating. Those classification services would require LRNA to certify that the ship complied with certain standards, including the requirements of the ship's flag state (the Marshall Islands) and the classification society's own rules. Pearl Seas agreed that LRNA would be the classification society for its ships.

Later in 2006, Pearl Seas entered into a contract (the "Shipbuilding Contract") with Irving under which Irving would build a ship for Pearl Seas. LRNA then entered into a contract (the "Classification Contract") with Irving under which LRNA would survey the ship during construction, ensuring that it complied with the rules and regulations specified in the Shipbuilding Contract, including the LR Rules. As construction continued, disputes arose between Irving and Pearl Seas. Irving invoked the arbitration clause in the Shipbuilding Contract in 2008, and contentious arbitration continued until Irving and Pearl Seas settled in 2013.

2

No. 14-20554

## II.

Pearl Seas sued LRNA in the court *a quo* in late 2013, alleging fraud, gross negligence, negligent misrepresentation, collusion, aiding and abetting, civil conspiracy, and promissory estoppel in tort. Each cause of action is essentially based on the theory that LRNA misrepresented the status of the vessel to Pearl Seas and to the arbitrators.

LRNA moved to dismiss for FNC, seeking enforcement of two forum-selection clauses that it said required the action to be brought in England. The first appears in the LR Rules and reads, "Any dispute about the Services or the Contract is subject to the exclusive jurisdiction of the English courts and will be governed by English law." The second appears in the Classification contract between LRNA and Irving and reads, "Any dispute, claim, or litigation between any member of the LR Group and the Client arising from or in connection with the Services provided by LR shall be subject to the exclusive jurisdiction of the English courts and will be governed by English law." Irving claimed that both of these clauses prevented Pearl Seas from bringing this suit in Texas.

Pearl Seas maintained that neither of these clauses applied, because Pearl Seas was not a signatory to any agreement containing a forum-selection clause. The district court held a hearing in which it questioned the parties about numerous matters, including the motion to dismiss for FNC. A few weeks later, the court issued an order denying several of the motions to dismiss and the plaintiff's motion for *in camera* inspection. The court explained its decision in one sentence: "Having considered the motions, submissions, and applicable law, the Court determines that all motions should be denied."

## III.

To be entitled to the extraordinary remedy of mandamus, LRNA has to satisfy three requirements. First, it must have "no other adequate means to

No. 14-20554

attain the relief [it] desires." *Cheney v. U.S. Dist. Court for Dist. of Columbia*, 542 U.S. 367, 380 (2004). Second, it has to show a "clear and indisputable" right to the writ. *Id.* at 381. And third, this court "must be satisfied that the writ is appropriate under the circumstances." *Id.*

## A.

First, LRNA must show that it has no other "adequate means." The writ is not "a substitute for the regular appeals process," *id.* at 380–81, so LRNA must show that an ordinary appeal is inadequate. This requirement is satisfied: The usual appeals process does not provide an effective way to review a denial of a motion to dismiss for FNC. Immediate appellate review of the decision to deny is rarely available, and review after final judgment is ineffective to vindicate a wrongfully denied motion for FNC.

There is no adequate way immediately to review a denial of FNC. It is not appealable under the collateral-order doctrine. *Van Cauwenberghe v. Biard*, 486 U.S. 517, 527 (1988). The defendant has the option of seeking leave for an interlocutory appeal under 28 U.S.C. § 1292(b), which is available only in limited circumstances. The question to be certified must be "a controlling question of law as to which there is substantial ground for difference of opinion," § 1292(b), and even if it is, both the district court and the court of appeals have discretion not to grant the appeal. *See Gonzalez v. Naviera Neptuno A.A.*, 832 F.2d 876, 881 n.5 (5th Cir. 1987).[1] In *In re Volkswagen of America Inc.*, 545 F.3d 304 (5th Cir. 2008) (en banc), the court did consider the *unavailability* of § 1292(b) certification to be relevant in concluding that a denial of a venue-

---

[1] Other courts of appeals that have considered the question have come to the same conclusion: Section 1292(b) is not an adequate substitute for mandamus. *See In re Roman Catholic Diocese of Albany, New York, Inc.*, 745 F.3d 30, 36 (2d Cir. 2014); *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 761 (D.C. Cir. 2014), *cert. denied*, 2015 U.S. LEXIS 668 (U.S. Jan. 20, 2015).

transfer order qualified for mandamus relief. *See id.* at 319. That does not mean, however, that § 1292(b) by itself provides sufficient review when it is available.

LRNA is without adequate means to seek review of the denial when it occurs, but we must also evaluate whether the ordinary appeals process is otherwise sufficient. That is a difficult requirement to satisfy. In most cases, relief from a potentially erroneous interlocutory order is available by appeal after final judgment. Even though the defendant may be required to engage in a costly and difficult trial and expend considerable resources before the court enters an appealable judgment, those unrecoverable litigation costs are not enough to make this means of attaining relief inadequate. *See Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 29–30 (1943). There has to be a greater burden, some obstacle to relief beyond litigation costs that renders obtaining relief not just expensive but effectively unobtainable. Under *Volkswagen*, a defendant's entitlement to FNC ordinarily cannot adequately be vindicated through the regular appeals process.

In *Volkswagen*, we were faced with a mandamus petition regarding a denial of a motion to transfer venue. We held that the ordinary appeals process would not provide an adequate remedy for the erroneous decision not to order transfer. Two factors that we found convincing in the venue-transfer context are also present here. First, a defendant is unlikely to be able to satisfy an appellate court, after final judgment, that a failure to transfer venue was sufficiently prejudicial as to be outcome-determinative. And second, the very harm sought to be avoided by transferring venue—"inconvenience to witnesses, parties and other"—will have worked irreversible damage and prejudice by the time a final judgment is issued. *Volkswagen*, 454 F.3d at 319. Each of these reasons applies with equal force in the FNC context.

On appeal from a final judgment, the improper failure to transfer venue

is effectively unreviewable. The defendant would be in the unenviable position of having to show that "it would have won the case had it been tried in a convenient [venue]." *Id.* at 318–19 (quoting *In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 663 (7th Cir. 2003)). The same ineffectiveness of review characterizes the denial of an FNC motion: If it is denied and the case proceeds through trial, the denial will not be considered reversible error "unless the moving party can demonstrate great prejudice arising from trial in the plaintiff's chosen forum." *McLennan v. Am. Eurocopter Corp.*, 245 F.3d 403, 423–24 (5th Cir. 2001). Such a standard does not provide adequate post-judgment review.[2] When one considers the instruction in *Atlantic Marine* that the private-interest factors of FNC analysis should automatically be weighed in favor of enforcing a forum-selection clause,[3] it is especially inapposite to force parties to rely on *post hoc* appellate evaluations of whether the clause was worth bargaining for.

Even if the standard of review were such that a defendant could convince an appeals court that the error justified reversal, we acknowledged in *Volkswagen* that the harm done by going through trial to final judgment would not be remediable on appeal. Unrecoverable litigation costs do not make review after final judgment inadequate, *see Evaporated Milk*, 319 U.S. at 29–30, but the damage inflicted by the refusal to enforce a forum-selection clause is different from the costs that defendants face as a matter of course after denial of a motion that would otherwise terminate the litigation. The "inconvenience to witnesses, parties and other," *Volkswagen*, 545 F.3d at 319, is one of the factors

---

[2] *See Volkswagen*, 545 F.3d at 318–19; *see also In re Ford Motor Co.*, 591 F.3d 406, 416 (5th Cir. 2009) (on petition for rehearing) ("[I]n these FNC cases, mandamus is appropriate on this prong because, if the issue is argued only on any eventual direct appeal, there is no way to show that the outcome of the case would have been different, and any inconvenience to the parties 'will already have been done by the time the case is tried and appealed.'") (quoting *Volkswagen*, 545 F.3d at 318–19).

[3] *See Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 582 (2013).

No. 14-20554

weighed in determining whether an FNC motion should be granted. An FNC motion—like the venue-transfer motion at issue in *Volkswagen*—is a motion that asserts those damages are too high to justify trying the case where it was filed. If the matter must first proceed to final judgment before the denial of that assertion is evaluated, then the damage will always already be done. And "the prejudice suffered cannot be put back in the bottle." *Id.*

There is no reason to distinguish between the normal appeals process in the venue-transfer context, which we found lacking in *Volkswagen*, and that same process in the context of FNC. The first requirement for mandamus relief is therefore satisfied.

## B.

The second requirement for mandamus relief is that the movant has a "clear and indisputable" right to it. *Cheney*, 542 U.S. at 381. In recognition of the extraordinary nature of the writ, we require more than showing that the court misinterpreted the law, misapplied it to the facts, or otherwise engaged in an abuse of discretion. And even reversible error by itself is not enough to obtain mandamus. *See Volkswagen*, 545 F.3d at 309–10. Rather, we limit mandamus to only "clear abuses of discretion that produce patently erroneous results." *Id.* at 310. We therefore must decide whether there was a clear abuse of discretion and whether the court reached a patently erroneous result. Because both of these requirements are satisfied, this requirement for mandamus is met.

## 1.

In distinguishing between ordinary and "clear" abuses of discretion, we are guided by the principle reiterated in *Volkswagen* that mandamus must not become a means by which the court corrects all potentially erroneous orders.

*See id.* at 309 (citing *Will v. United States*, 389 U.S. 90, 98 n.6 (1967)). A court commits a clear abuse of discretion, however, when it "clearly exceeds the bounds of judicial discretion." *Id.* at 310. The district court's failure to provide an explanation of its denial of LRNA's motion clearly exceeded the bounds of judicial discretion given the facts and circumstances present here.

It is an abuse of discretion for a district court to grant or deny a motion to dismiss without written or oral explanation[4] or where, in ruling on a motion to dismiss for FNC, it "fails to address and balance the relevant principles and factors of the doctrine of [FNC]." *Air Crash*, 821 F.2d at 1166−67. The court provided no written or oral explanation of its decision to deny LRNA's motion.

In its response to the petition for mandamus, Pearl Seas claims that the court did not abuse its discretion because Pearl Seas provided an adequate legal and factual basis for denial in its brief, and the court indicated at a hearing that it "had reviewed the briefs and was well aware of the issues." This notion is unavailing. An explanation must be generated by the court, not inferred by the appellate court from the submissions of the parties. A contrary opposite rule would require us to step into the shoes of the district court and attempt to divine the basis for its decision without guidance, essentially reducing us to the role of replacing the district court's discretion with our own in violation of *Volkswagen*, 545 F.3d at 312.

The transcript of the July 17 hearing is likewise insufficient to satisfy the requirement of a written or oral explanation. The court specifically said that it has not yet decided the question of the forum-selection clause and offered no conclusion as to the clause's applicability or the propriety of granting

---

[4] *See In re Air Crash Disaster Near New Orleans, La.*, 821 F.2d 1147, 1166 (5th Cir. 1987) (en banc), *vacated on other grounds sub nom. Pan Am. World Airways, Inc. v. Lopez*, 490 U.S. 1032 (1989), *reinstated except as to damages by In re Air Crash Disaster Near New Orleans, La.*, 883 F.2d 17 (5th Cir. 1989) (en banc).

or denying the motion to dismiss.  Whether the court's questions indicated that it understood the law and the briefings is immaterial.

It is established that the court's failure to explain its decision was an abuse of discretion, but for mandamus to issue it must be a "clear" abuse.  That strict requirement is satisfied here. Denying the motion to dismiss without explanation and without any visible weighing of the factors of FNC is not just an abuse of discretion.  It is an action that takes the decision entirely outside the scope of judicial discretion, giving the parties and reviewing courts no way of understanding how the court reached its decision and providing no assurance that the decision was the result of conscientious legal analysis.

2.

We now turn to whether the district court reached a "patently erroneous result."  Because the court failed to enforce a valid forum-selection clause, it did patently err.

a.

The first question is whether the forum-selection clause applies to this case.  Pearl Seas is not a signatory to the contract between Irving and LRNA, but there are doctrines under which a non-signatory can be held to the terms of the contract.  The doctrine on which the parties focused is the one that applies here:  direct-benefits estoppel.

Direct-benefits estoppel is a doctrine that holds a non-signatory to a clause in a contract during litigation if the non-signatory "knowingly exploits the agreement" containing the clause. *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 361–62 (5th Cir. 2003).  We have identified two specific ways in which a non-signatory can be bound under this theory.  First, it may be bound "by knowingly seeking and obtaining 'direct benefits' from the

contract." *Noble Drilling Servs., Inc. v. Certex USA, Inc.*, 620 F.3d 469, 473 (5th Cir. 2010). Second, it may be bound "by seeking to enforce the terms of that contract or asserting claims that must be determined by reference to that contract." *Id.* This case satisfies the second basis for direct-benefits estoppel under well-established authority.

There are two main requirements for direct-benefits estoppel under this theory. The party has to have "embraced the contract despite [its] non-signatory status but then, during litigation, attempt to repudiate the . . . clause in the contract." *Hellenic Inv. Fund, Inc. v. Det Norkse Veritas*, 464 F.3d 514, 517–18 (5th Cir. 2006). First, the non-signatory has to have obtained some benefit under the contract while it was in effect. This court made clear in *Hellenic* that the value a classification society offers to the ultimate purchaser is sufficient to satisfy this requirement.[5] Second, the non-signatory's suit has to be at least "premised in part" on the agreement. *Id.* at 518 (quoting *Bridas*, 345 F.3d at 362). Here, as in *Hellenic*, the complaint is alleging violations of duties that are based in the agreement containing the forum-selection clause.

In *Hellenic*, we were faced with a factually similar case and concluded that direct-benefits estoppel required the enforcement of the forum-selection clause against the non-signatory plaintiff. There the plaintiff purchased a ship and then, after problems arose with the vessel, sued the classification society DNV for negligent misrepresentation. *Id.* at 515–16. DNV's Rules contained a forum-selection clause mandating that a "dispute arising in relation to or as a consequence of these Rules" could be brought only in Norwegian court. *Id.* at 516–17. We held that the negligent-misrepresentation claim was premised

---

[5] *See Hellenic*, 464 F.3d at 519 ("Having stated a claim that expressly requires that [the classification society's] performance be for Hellenic's benefit, Hellenic cannot avoid the estoppel implications of its position."); *cf. E.I. duPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 200 n.6 (3d Cir. 2001).

on a breach of DNV's duties under its rules and therefore required the ship purchaser to embrace the entire contract, including the forum-selection clause.

Pearl Seas has not identified a relevant way in which this case is legally distinguishable from *Hellenic*, and we can find none. In both cases a ship purchaser sued a classification society for negligent misrepresentation. In both cases the negligent-misrepresentation claim referenced duties that must be resolved by reference to the classification society's rules. *Hellenic* settles the question of applying direct-benefits estoppel here.

Pearl Seas maintains that the forum-selection clause in Lloyd's Rules does not, by its own language, apply to this dispute because it is limited to disputes about "the Services or the Contract." "Contract" is defined as "the contract for supply of the Services," and the Rules define "Services" as "the services provided by LR." Because the services in dispute are provided by LRNA and not by the British parent Lloyd's Register, Pearl Seas argues, the Rules do not encompass disputes arising from services provided by LRNA, which is instead part of the defined term "the LR Group." It appears, however, that LR sometimes uses "LR" to refer not just to the British classification society but also to its foreign associates and subsidiaries. For example, the same part of the Rules cited by Pearl Seas also refers to "Services" offered by the LR Group, which included LRNA. It seems that LRNA's intention in the language of these rules was not to limit the forum-selection clause's applicability to those lawsuits against LR and not its subsidiaries.

The same interchangeability can be seen in the forum-selection clause in the Classification Contract. It applies to disputes "between any member of the LR Group and the Client" relating to "the Services provided by LR." If LRNA were not understood to be included within "LR," it is not evident why an LRNA contract would have a forum-selection clause about disputes between the client and a different entity.

11

No. 14-20554

Pearl Seas also argues that, because it is alleging tort claims and not contract claims, direct-benefits estoppel does not apply. That argument is also unavailing in light of *Hellenic*. Once a party who has embraced the contract during its life has sued to enforce the contract's terms or sues on a claim that must be resolved by reference to the contract, it has embraced the contract and cannot disclaim it in litigation. The plaintiff in *Hellenic* alleged negligent misrepresentation—a tort claim—but the court held that the forum-selection clause applied because the claim was based in part on the contract and still depended on terms in the contract. *See Hellenic*, 464 F.3d at 518.

A non-signatory plaintiff can avoid a forum-selection clause by disclaiming reliance on the contract, *see Noble Drilling Servs.*, 620 F.3d at 474, but that is not what Pearl Seas is doing here. Instead, it is bringing a claim that this court has already said is based in part on the contract. This selective invocation of contractual duties is exactly the sort of inconsistency the doctrine of direct-benefits estoppel is designed to prevent.

Pearl Seas also urges that direct-benefits estoppel cannot apply because the LR Rules and the contract between Irving and LRNA both disclaim liability to third parties and enforceability by third parties. Reciprocity and mutual enforceability are not, however, requirements for direct-benefits estoppel, and Pearl Seas cites no authority that supports its position. Indeed, in its brief Pearl Seas at times discusses the doctrine of third-party beneficiary.

As this court has recognized, third-party beneficiary and direct-benefits estoppel are distinct doctrines. Third-party-beneficiary doctrine looks at what the parties intended when they executed the contract, whereas direct-benefits estoppel looks at the actions of the parties after the contract was executed. *See Bridas*, 345 F.3d at 362 (quoting *E.I. duPont de Nemours*, 269 F.3d at 200 n.7).

No. 14-20554

If we interpreted direct-benefits estoppel to require that the parties demonstrate an intention at the contracting stage to create a third-party beneficiary, we would eliminate this distinction and collapse the doctrines.

Finally, Pearl Seas avers that LRNA cannot rely on direct-benefits estoppel because Pearl Seas alleged fraud, and this denies LRNA the benefit of equitable remedies.  Pearl Seas has not provided any binding or persuasive authority for the proposition that a plaintiff can deny a defendant access to equitable remedies just by alleging fraud, especially where the fraud is unrelated to the applicability of the equitable doctrine.  Pearl Seas does not assert that the claimed fraud played any role in bringing Pearl Seas within the scope of the forum-selection clause or allowed LRNA to hide its inequitable behavior behind a shield of equity.  We decline to render direct-benefits estoppel inoperative by stating that an allegation of a defendant's wrongdoing is sufficient to deny the application of these clauses.


b.

As the foregoing explanation shows, the forum-selection clause does apply to Pearl Seas' action against LRNA.  This, however, is not the end of our analysis of whether LRNA has a "clear and indisputable" right to mandamus.  Having established that the forum-selection clause applies, we must determine whether the district court should have dismissed the complaint in accordance with that clause.  Given the Supreme Court's instructions in *Atlantic Marine*, the district court erred when it denied the motion to dismiss.

*Atlantic Marine* laid out the process courts must follow in ruling on an FNC motion that seeks to enforce a valid forum-selection clause.  Instead of independently weighing the private interests of the parties, the court should "deem the private-interest factors to weigh entirely in favor of the preselected forum." *Atl. Marine*, 134 S. Ct. at 582.  The court should then weigh the public-

interest factors, which include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Id.* at 581 n.6 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)).  The plaintiff's choice of forum will not be given any weight, unlike in the ordinary FNC context.  *Id.* at 581.  The Supreme Court allows for the possibility that a court may properly refuse to grant the motion despite a valid forum-selection clause, but the forum-selection clause will prevail except in "unusual cases."  *Id.* at 582.

Pearl Seas has not identified any factors that render this motion one of those unusual cases.  In its response to LRNA's motion to dismiss, Pearl Seas contends that Texas is the proper forum because the court needs to establish "uniform rules of conduct applicable to corporate entities in Texas," because some communications originated in Texas, and because LRNA is the defendant in a similar lawsuit in Texas district court.  Those considerations are not enough to make enforcement of the forum-selection clause invalid.[6]

Pearl Seas raises additional concerns.  It theorizes that it would face "extreme juridical disadvantages in an English forum," but it does not identify what those disadvantages would be.  Pearl Seas points out that the Fifth Circuit permits negligent-misrepresentation claims against classification societies, but it does not show that the remedies in English courts would be lacking. Pearl Seas claims that dismissing for FNC would deprive the plaintiff of available Texas and U.S. remedies and would therefore violate public policy, but Pearl Seas does not identify a remedy that would be unavailable in England. In short, Pearl Seas fails to show why this is the exceptional case in which a

---

[6] Additionally, the other LRNA case that was pending in Texas has since been dismissed for FNC.  *See Vloeibare Pret Ltd. v. Lloyd's Register N. Am., Inc.*, No. 4-13-3653, 2014 WL 3908195 (S.D. Tex. Aug. 8, 2014).

No. 14-20554

valid forum-selection clause should not be enforced.  We can think of no reason.

In sum, the district court committed a clear abuse of discretion when it stepped outside the scope of judicial power and denied the FNC motion without explanation.  The court, with the best of intentions, then reached a patently erroneous result when it declined to enforce a valid forum-selection clause. LRNA has a "clear and indisputable" right to the issuance of the writ.

## C.

The third requirement for the issuance of a writ of mandamus is that it "is appropriate under the circumstances."  *Cheney*, 542 U.S. at 381.  Because the writ is "supervisory in nature," it is especially appropriate where its issuance will have significance "beyond the immediate case."  *Volkswagen*, 545 F.3d at 319.  There is already an appeal pending from another case on this issue in the Fifth Circuit, and it is possible that more will be forthcoming now that the Supreme Court has strengthened the enforcement of forum-selection clauses in *Atlantic Marine*.

The petition for writ of mandamus is GRANTED.

\* \* \* \* \*

JENNIFER WALKER ELROD, Circuit Judge, dissenting:

Mandamus is an "extraordinary remedy" for correcting a "clear abuse of discretion" based on "extraordinary errors" leading to "a patently erroneous result."  *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 309, 318 (5th Cir. 2008) (en banc) (issuing the writ because the district court "disregard[ed] the specific precedents of this Court in *In re Volkswagen I*").  Here, in its decision to mandamus the district court, the majority opinion creates two new legal rules about the doctrine of direct benefits estoppel, neither of which was compelled

15

by our precedent. Because I do not believe the district court patently erred by not anticipating these two new rules, I respectfully dissent.

The majority opinion's first new rule concerns the extent of "direct benefit" a non-signatory must receive. In our most on-point precedent, *Hellenic Inv. Fund, Inc. v. Det Norske Veritas*, we applied direct benefits estoppel where the non-signatory shipowner received the benefit of a class certificate from the classification society. 464 F.3d 514, 516 (5th Cir. 2006). Our "direct benefit" analysis focused specifically on the shipowner's receipt of a class certificate; we did not hold that the classification society's preliminary inspections, standing alone, conferred a benefit on the shipowner. Rather, it was the issuance of the class certificate that conferred a benefit on the shipowner. Here, Pearl Seas never received a class certificate from LRNA. The majority opinion nonetheless holds that direct benefits estoppel applies because LRNA "examin[ed] the ship and communicat[ed] with Pearl Seas in the course of administering [incomplete] classification services." This is an extension of the holding in *Hellenic*. The majority opinion's new rule might be sensible, but an equally sensible rule is one requiring the issuance of a class certificate to trigger direct benefits estoppel, as occurred in *Hellenic*. The district court would not have patently erred by choosing the latter rule, even though the majority opinion prefers the former.

The majority opinion's second new rule concerns the knowledge requirement of the direct benefits estoppel doctrine. As the majority opinion recognizes, direct benefits estoppel only applies if the non-signatory knows about the existence and the terms of the contract containing the forum-selection clause. *See Noble Drilling Servs., Inc. v. Certex USA, Inc.*, 620 F.3d 469, 473 (5th Cir. 2010). We have not previously addressed *when* the non-signatory must acquire this knowledge. Here, Pearl Seas acquired knowledge of the forum-selection clause after some of the alleged misrepresentations, but

No. 14-20554

before other alleged misrepresentations.  The majority opinion decides that direct benefits estoppel applies so long as the non-signatory gains knowledge "before much of the alleged wrongdoing and before [the non-signatory files its lawsuit]."  The majority opinion's new rule seems sensible enough, but a different rule might be equally sensible—say, a rule that a non-signatory only can be bound if it learns about the forum-selection clause before its cause of action accrues (i.e. before the first misrepresentation).  The district court would not have patently erred by choosing the latter rule, even though the majority opinion prefers the former.[1]

Finally, it is important to note that this is not merely a "time-and-place" dispute.  If the forum-selection clause is enforced, Pearl Seas may only bring its claims in England.  However, the parties acknowledged at oral argument that no cause of action exists in the English courts for a ship owner to allege negligent misrepresentation against a classification society.  *Cf. Otto Candies, L.L.C. v. Nippon Kaiji Kyokai Corp.*, 346 F.3d 530 (5th Cir. 2003) (permitting negligent-misrepresentation claims against classification societies).  Moreover, the Classification Contract expressly denies the right of any third party, such as Pearl Seas, to enforce the terms of the Classification Contract.  Thus, the majority opinion effectively deprives Pearl Seas of any forum for its grievances against LRNA to be heard.

---

[1] Indeed, this likely is the ground on which the district court denied LRNA's motion to dismiss.  In *Petrobras America, Inc. v. Vicinay Cadenas, S.A.*, 921 F. Supp. 2d 685, 694 (S.D. Tex. 2013), the same district court denied a motion to dismiss for *forum non conveniens* because "there [was] no evidence that [plaintiff] had actual knowledge of the *terms* of the Purchase Order."  Pearl Seas, at a hearing in the district court, cited *Petrobras* and argued that it too lacked knowledge of the terms of the forum selection clause until after misrepresentations were made.  LRNA did not offer any response to that argument.

No. 14-20554

Because I do not believe the district court patently erred, and because the majority opinion deprives Pearl Seas of any forum for its claim, I would deny the petition for writ of mandamus.