# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
September 15, 2010

Lyle W. Cayce
Clerk

No. 10-20083

NOBLE DRILLING SERVICES INC.,

Plaintiff - Appellant

v.

CERTEX USA, INC.; BRIDON-AMERICAN CORPORATION; BRIDON
INTERNATIONAL, LTD.,

Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Texas

Before CLEMENT, SOUTHWICK, and HAYNES, Circuit Judges.

HAYNES, Circuit Judge:

Noble Drilling Services appeals the district court's dismissal of its case pursuant to an arbitration clause incorporated into two agreements to which it was not a party. We REVERSE the district court's dismissal and REMAND for proceedings on the merits in the district court.

## I. Facts and Background

This case centers on Noble Drilling Services, Inc.'s ("Noble") purchase of wire mooring rope from Bridon International, Ltd. and Bridon-American Corporation (collectively "Bridon") through its distributor, Certex USA, Inc. ("Certex"). After various hurricanes hit the Gulf of Mexico, the United States

No. 10-20083

Mineral Management Service required all drilling rigs in the gulf to enhance their moorings. To comply with that order, Noble decided to purchase new wire mooring ropes, and it approached Bridon and Certex about the possibility of buying wire ropes from Bridon. Noble alleges that Bridon[1] and Certex made various representations about the strength of Bridon's ropes, and, based on these representations, Noble entered into a sales contract with Certex to purchase certain wire rope manufactured by Bridon. Certex is Bridon's distributor pursuant to a distribution agreement (the "Distribution Agreement") that expressly disclaims any intention to benefit any third party.[2] It also incorporates an arbitration clause.

To fulfill Noble's order, Certex entered into purchase order agreements with Bridon (the "Purchase Order Agreements") specifying the type of wire rope that Noble wanted and directed Bridon to ship that rope directly to Noble. The Purchase Order Agreements incorporate Bridon's "terms and conditions." Bridon's "terms and conditions" include a provision as follows: "If at any time any dispute or difference arises out of or in connection with the contract, either party may give the other notice in writing of the existence of such dispute, or difference, and the same shall be referred to the arbitration of a person . . . ." No evidence suggests that Noble was ever furnished a copy of the Distribution Agreement, the Purchase Order Agreements, or any "terms and conditions" containing an arbitration clause prior to this litigation. For its part, Noble's

---

[1] Bridon contends that the only pre-purchase "representations" made to Noble were contained in Certex's literature, not Bridon's own. We express no opinion about the merits of this assertion or Noble's contrary position.

[2] The Distribution Agreement incorporated Bridon's terms and conditions including the following: "The right whether past present or future pursuant to the Contracts (Rights of Third Parties) Act of 1999 (or otherwise) of any third party to enforce the terms of this contract is expressly excluded." The Contracts (Rights of Third Parties) Act of 1999 is a United Kingdom law that expressly grants parties rights similar to our "third-party beneficiary" status.

orders to Certex did not contain an arbitration clause.  Indeed, Noble incorporated its own terms and conditions in its order to Certex, including a clause to the effect that Noble's purchase order and incorporated terms and conditions represented the complete agreement of the parties.

After Noble installed the ropes, Hurricane Ike struck the Gulf of Mexico, and the ropes in question allegedly failed, such that Noble's rigs were damaged. Noble brought this lawsuit alleging that Certex breached its sales contract with Noble by failing to deliver wire ropes of the quality and capacity represented. Noble alleged that Bridon was negligent in its design of the wire ropes.  Noble also alleged that both Bridon and Certex: (1) breached their express warranty that the ropes would conform to the specifications represented to Noble; (2) breached an implied warranty of merchantability because the goods were not of fair or average quality, were not fit for their particular purpose, and did not meet the quality and performance levels represented to Noble; (3) were negligent and grossly negligent in making misrepresentations to Noble about the ropes; (4) engaged in fraud and fraudulently induced Noble into purchasing the ropes by making false representations to Noble; (5) were liable under redhibition, as defined by Louisiana law; and (6) violated the Louisiana Products Liability Act.

In the district court, Bridon and Certex moved to compel Noble to arbitrate its claims based on the arbitration clause incorporated in the Purchase Order Agreements and Distribution Agreement, even though Noble was not a party to those agreements.  Bridon and Certex argued that Noble was bound under the theory of "direct benefits estoppel."  The district court found that Noble was bound to arbitrate its claims because its claims were premised on Bridon's failure to perform according to the terms of the Purchase Order Agreements and

No. 10-20083

that Noble received a direct benefit from those orders.  It dismissed the case,[3] and Noble appealed to this court.

## II.  Standard of Review

We review the district court's use of direct benefits estoppel to compel arbitration for an abuse of discretion.[4]  *See Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524, 528 (5th Cir. 2000) ("Accordingly, whether to utilize equitable estoppel [to compel arbitration] is within the district court's discretion; we review to determine only whether it has been abused.").  "To constitute an abuse of discretion, the district court's decision must be either premised on an application of the law that is erroneous, or on an assessment of the evidence that is clearly erroneous."  *Id.*  Additionally, in reviewing cases decided under Rule 12(b)(3), this court must "view all the facts in a light most favorable to the plaintiff." *Ambraco*, 570 F.3d at 237 (quotation marks and citation omitted).  We note that the application of estoppel to compel Noble to arbitrate is governed by federal law in this case. *Wash. Mut. Fin. Group, L.L.C. v. Bailey*, 364 F.3d 260, 267 n.6 (5th Cir. 2004).

---

[3]  Our court has not previously definitively decided whether Rule 12(b)(1) or Rule 12(b)(3) is the proper rule for motions to dismiss based on an arbitration or forum-selection clause.  *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 n.1 (5th Cir. 2009) (declining to address whether Rule 12(b)(1) or Rule 12(b)(3) is the appropriate rule for dismissal based upon a forum-selection clause); *Lim v. Offshore Specialty Fabricators, Inc.*, 404 F.3d 898, 902 (5th Cir. 2005); *see also Haynsworth v. The Corporation*, 121 F.3d 956, 963 (5th Cir. 1997) (noting that forum-selection clauses and arbitration clauses are indistinguishable for enforceability purposes).  Bridon and Certex invoked Rule 12(b)(3), and Noble does not appeal their use of Rule 12(b)(3). Because this court has accepted Rule 12(b)(3) as a proper method for dismissal and the parties do not address this issue, we need not decide which section applies to this kind of dismissal.  *See Lim*, 404 F.3d at 902.

[4]  Noble argues that our review is de novo.  While this court generally reviews the grant or denial of arbitration de novo, *Garrett v. Circuit City Stores, Inc.*, 449 F.3d 672, 674 (5th Cir. 2006), this court has stated a number of times that an abuse of discretion standard applies to a district court's use of equitable estoppel to compel arbitration, *e.g.*, *Brown v. Pac. Life Ins. Co.*, 462 F.3d 384, 399 (5th Cir. 2006); *see also Palmer Ventures L.L.C. v. Deutsche Bank A.G.*, 254 F. App'x 426, 429 (5th Cir. 2007) (unpublished).

No. 10-20083

## III. Discussion

Noble argues that the district court erred in finding that it was obligated to arbitrate its claims against Bridon and Certex under the doctrine of direct benefits estoppel. Noble contends that it was not a party to the contracts in question, was expressly excluded from those contracts, was not "either party" described in the arbitration clause, and was not relying upon the contracts in question for its lawsuit. "Direct-benefit estoppel involve[s] non-signatories who, during the life of the contract, have embraced the contract despite their non-signatory status but then, during litigation, attempt to repudiate the arbitration clause in the contract." *Hellenic Inv. Fund, Inc. v. Det Norske Veritas*, 464 F.3d 514, 517-18 (5th Cir. 2006) (alteration in original) (internal question marks omitted). A non-signatory can "embrace" a contract containing an arbitration clause in two ways: (1) by knowingly seeking and obtaining "direct benefits" from that contract; or (2) by seeking to enforce the terms of that contract or asserting claims that must be determined by reference to that contract. *See id*. at 517-20 (applying direct benefits estoppel when a non-signatory knowingly accepted benefits and brought claims that had to be determined by reference to a contract containing a forum-selection clause); *Bridas S.A.P.I.C. v. Gov't of Turkm.*, 345 F.3d 347, 361-62 (5th Cir. 2003) ("Direct benefits estoppel applies when a nonsignatory *knowingly* exploits the agreement containing the arbitration clause.") (emphasis added) (internal quotation marks omitted). It appears that the district court invoked both methods of "embracing" a contract because the court found that Noble both received a direct benefit and filed a suit premised on the Purchase Order Agreements. Accordingly, we review both possibilities.

Courts have applied direct benefits estoppel to bind a non-signatory to an arbitration agreement when the non-signatory knowingly exploits the contract containing the arbitration clause and obtains a direct benefit from that contract.

*See Hellenic*, 464 F.3d at 517-18 (stating that direct benefits estoppel applies to non-signatories who knowingly embrace and exploit a contract for their benefit). To satisfy the knowledge requirement, the case law requires that the non-signatory have had actual knowledge of the contract containing the arbitration clause. *See Hellenic*, 464 F.3d at 515-16, 519 (applying direct benefits estoppel to a non-signatory that knew of the contract to which it was later bound); *Bridas*, 345 F.3d at 361-62; *see also Deloitte Noraudit A/S v. Deloitte Haskins & Sells, U.S.*, 9 F.3d 1060, 1064 (2d Cir. 1993) (finding that a non-signatory was bound when it received a copy of the agreement containing an arbitration clause).

Noble alleges that it did not have any knowledge of the Purchase Order Agreements until after this litigation began. It argues that it "was never apprised of the existence, much less any specific terms, of the [Purchase Order Agreements]." Appellees do not point to any evidence that Noble had any knowledge of the Purchase Order Agreements at the time Noble purchased and received the ropes, and the district court did not find that Noble had such knowledge.[5] Because no evidence supports a conclusion that Noble knew of the terms of the Purchase Order Agreements, Noble could not have the knowledge necessary to support the "knowingly exploited" theory of direct benefits estoppel.

As discussed above, the doctrine of direct benefits estoppel also applies when a non-signatory sues to enforce certain terms in a contract containing an arbitration clause, *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 418 (4th Cir. 2000),[6] or brings claims that can only be

---

[5] Moreover, Noble could not have had knowledge of the Purchase Order Agreements when it ordered the ropes from Certex because the Purchase Order Agreements were not created until after Noble ordered the ropes.

[6] Bridon asserts that *Int'l Paper Co.* is "on all fours with the circumstances at bar." That case, however, involved a non-signatory who sought to enforce warranties found in a contract containing an arbitration clause. *Int'l Paper Co.*, 206 F.3d at 418 ("In its amended complaint, International Paper alleges that Schwabedissen failed to honor the warranties in the Wood-Schwabedissen contract, and it seeks damages, revocation, and rejection 'in

6

determined by reference to an agreement containing an arbitration clause, *see Hellenic*, 464 F.3d at 519-20.[7]  Noble does not seek to enforce a specific term in the Purchase Order Agreements, so this second version of direct benefits estoppel applies only if Noble's claims can be determined solely by reference to the Purchase Order Agreements.  The district court found that Noble's claims were based on the terms of the Purchase Order Agreements, and, therefore, Noble must arbitrate those claims under the terms of those agreements.  In support of the district court's finding, Appellees argue that "Noble's lawsuit is simply an 'effort to enforce' the Rope [sic] specifications that were included in the [Purchase Order Agreements]."  Noble argues that none of its claims are based on the Purchase Order Agreements and that direct benefits estoppel does not apply because its claims can be determined without reference to the agreements.  It contends that all claims of misrepresentation and warranty are based either on pre-purchase representations by Bridon and Certex or on obligations imposed by law.  No obligation, Noble contends, arises from the Purchase Order Agreements.

As plaintiff, Noble is not required to base its claims on the Purchase Order Agreements and can, as it has, disclaim any reliance thereupon.  Noble's

---

accordance with' that contract. International Paper's entire case hinges on its asserted rights under the Wood-Schwabedissen contract . . . .").  Noble is not seeking to enforce any specific warranty or guaranty in the Purchase Order Agreements, so *Int'l Paper Co.* is not on "all fours" with this case.

[7] *Hellenic* provides an example of this doctrine.  464 F.3d at 519-20.  In that case, a buyer of a ship brought a negligent misrepresentation claim against a ship classifier, alleging that the classifier had made false representations in a classification report that the buyer received.  *Id.* at 515-16.  The classification report had been produced in accordance with the classifier's own rules, which included a forum-selection clause.  *Id.*  The court found that the buyer was bound by the forum-selection clause to litigate its negligent misrepresentation claim against the classifier in Norway because the buyer's negligent misrepresentation claim could only be determined by referencing the rules under which the classification report had been produced.  *Id.* at 519-20.  In other words, whether the ship classifier made any misrepresentations turned on whether it followed its own rules in classifying the ship; as a result, the buyer was bound by the forum-selection clause found in the rules.  *Id.*

No. 10-20083

claims—by its own admission—rise or fall on the pre-purchase representations and whatever duties a manufacturer and distributor have by law. We thus conclude that the theory of direct benefits estoppel is not applicable, and Noble is not obligated to arbitrate its claims.

## IV.  Conclusion

Accordingly, we REVERSE the district court's dismissal of this case and REMAND for proceedings on the merits.