# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 8, 2013

No. 12-60051

Lyle W. Cayce
Clerk

VT HALTER MARINE, INCORPORATED,

Plaintiff–Appellant

v.

WARTSILA NORTH AMERICA, INCORPORATED,

Defendant–Appellee

Appeal from the United States District Court
for the Southern District of Mississippi
1:11-CV-250

Before WIENER, CLEMENT, and PRADO, Circuit Judges.

PER CURIAM:[*]

VT Halter Marine, Inc. ("VTHM") appeals the district court's grant of Wartsila North America, Inc.'s ("Wartsila") motion to compel arbitration. Because we hold that VTHM did not agree to arbitrate disputes with Wartsila, we REVERSE and REMAND to the district court for a determination of whether one of the exceptions that bind non-signatories to arbitration agreements applies here.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-60051

## A.     Factual Background

This case concerns three parties, two contracts, and one arbitration clause. Third-party ship operator Vessel Management Services, Inc. ("Vessel Management") contracted with Plaintiff–Appellant VTHM (the "Construction Contract") to construct several vessels, including the *M/V Pride* (the "*Pride*"). Under the Construction Contract, Vessel Management would supply VTHM with various components for the vessels, including the main engines, shaft, hub, and blades. VTHM would receive and store those parts at its shipyard pending installation in a vessel for Vessel Management.

Vessel Management also entered into a contract with Defendant–Appellee Wartsila (the "Sales Contract"), under which Wartsila would provide components for Vessel Management's vessels. The Sales Contract between Wartsila and Vessel Management includes a mandatory arbitration clause, which states,

> This Agreement shall be construed in accordance with the laws of the State of New York, without reference to its conflict of laws provisions. Any dispute between the parties arising out of or in connection with this Agreement shall be finally settled under the Rules of Arbitration of the American Arbitration Association by one or more arbitrators appointed in accordance with the said rules, in New York, New York.

To be clear, VTHM is not a party to the Sales Contract, and is thus a "non-signatory" with respect to it; VTHM and Wartsila have not entered into any contract with each other.

Pursuant to the Sales Contract, Vessel Management bought propulsion systems (a/k/a shaft/hub assemblies) from Wartsila for the vessels VTHM was building, including the *Pride*. Wartsila delivered the propulsion systems directly to VTHM at its shipyard for storage until they could be installed. VTHM later installed a propulsion system in the *Pride*. Thereafter, the *Pride*'s propulsion

2

system failed inspection. VTHM claims that Wartsila represented to Vessel Management that VTHM's poor workmanship caused the failure. Based on Wartsila's representation, Vessel Management demanded that VTHM purchase a replacement propulsion system for the *Pride*. VTHM states that although it believed that Wartsila's representation about VTHM's workmanship was false, it purchased a new propulsion system to avoid liquidated damages under the Construction Contract.

## B.    Procedural Background

VTHM sued Wartsila, seeking to recover damages that it alleges it sustained through having to replace Wartsila's defective propulsion system and through Wartsila's representation that VTHM was responsible for the *Pride*'s failure. VTHM alleges two causes of action: (1) breach of warranty and (2) tortious interference with contractual relations. First, as to the breach of warranty claim, VTHM contends that although it is not a party to the Sales Contract, it has the right, as an "equitable subrogee," to stand in the shoes of Vessel Management to enforce Wartsila's obligation to replace the failed propulsion system under the Sales Contract's warranty. As to the second claim, VTHM asserted that Wartsila tortiously interfered with VTHM's contractual relationship with Vessel Management (*viz*., the Construction Contract) by falsely telling Vessel Management that VTHM incorrectly installed the propulsion system.

Wartsila moved to compel arbitration as to both claims. VTHM conceded that its first claim, breach of warranty, was subject to mandatory arbitration because the breach of warranty claim was derived from Vessel Management's rights under its Sales Contract with Wartsila, which had a mandatory arbitration clause. VTHM made no such concession, however, as to its tortious interference claim. The district court granted Wartsila's motion, ordering both

claims to arbitration and dismissing both. VTHM appealed to this Court, arguing that, as a non-signatory to the arbitration agreement between Wartsila and Vessel Management, it is not bound by it. VTHM argues, further, that none of the exceptions that bind non-signatories to arbitration agreements applies in this case.

## II. JURISDICTION AND STANDARD OF REVIEW

The district court entered final judgment on this matter on December 14, 2011. This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

Generally, the Fifth Circuit reviews the grant or denial of a motion to compel arbitration de novo. *Noble Drilling Servs., Inc. v. Certex USA, Inc.*, 620 F.3d 469, 472 n.4 (5th Cir. 2010). But, when a district court applies equitable estoppel to compel arbitration, this Court determines only whether the district court has abused its discretion. *Id.*; *see also Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524, 528 (5th Cir. 2000). VTHM argues that the district court did not rely on equitable estoppel, and so de novo review must be applied.

Wartsila seeks to avoid de novo review by contending that although the district court did not expressly refer to equitable estoppel, it nevertheless relied on it. For Wartsila, because "[equitable] estoppel doctrine is the only basis by which VTHM could have been compelled to arbitrate its claims," the district court must have relied on it without stating so. Wartsila fails to consider, however, that the district court may simply have erred in compelling arbitration on the tortious interference claim. The district court, in a three-page opinion, never refers to equitable estoppel or appeals to the policy justifications behind equitable estoppel.

Wartsila provides no case, and we can find none, where this Court reviewed for abuse of discretion a district court order compelling arbitration that did not clearly apply equitable estoppel. Because there is no indication from the district court's order that it applied equitable estoppel, we assume that it did not.

## III.  DISCUSSION

Arbitration is a contract matter between parties, and a court generally cannot compel a party to arbitrate a dispute unless the parties agreed to arbitrate the dispute in question. *Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1064 (5th Cir. 1998) (citing *AT&T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 648 (1986)); *see also Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758, 1774 (2010) ("We think it is also clear from our precedents and the contractual nature of arbitration that parties may specify *with whom* they choose to arbitrate their disputes . . . .  Nothing in the FAA authorizes a court to compel arbitration of any issues, *or by any parties*, that are not already covered in the agreement." (internal quotation marks, citations, and alterations omitted)).  This Court in *Pennzoil* articulated the two general requirements for compelling a party to arbitrate a particular dispute: the court must determine both that (1) the two parties have a valid agreement to arbitrate, and (2) the dispute in question falls within the scope of that arbitration agreement.   139 F.3d at 1065.   The district court most likely overlooked that VTHM is not a party to the  Sales Contract containing the arbitration clause.  The district court cited *Pennzoil* as the basis for its analysis, suggesting that it would evaluate first, whether the two parties had a valid agreement to arbitrate, and second, whether the dispute in question fell within the scope of that arbitration agreement.  *See  id.*  However, the district court appears to have skipped the first requirement (did the parties have a valid agreement to arbitrate?) and instead jumped straight to the second (did the dispute in question fall within the scope of the agreement?).

There are two indications that the district court overlooked the first requirement.  First, the court's order cited the part of *Pennzoil* that addresses the second requirement.  *See Pennzoil*, 139 F.3d at 1067.  Moreover, the district court's discussion includes references to two cases that addressed *Pennzoil*'s second step.  The first case, *Brandom v. Gulf Coast Bank & Trust Co.*, No. 00-

11119, 2001 WL 498720 (5th Cir. Apr. 16, 2001) (unpublished), concerns the "scope of the arbitration clause." *Id.* at *1. The second case, *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*, 388 U.S. 395, 396–98 (1967), deals with whether fraud was within the scope of an arbitration agreement. In both cases cited by the district court, the threshold inquiry of whether the parties agreed to arbitrate in the first place was undisputed.

Second, the order's language focuses only on the broad scope of the arbitration agreement: "[t]his Court must resolve any doubts concerning the scope of coverage of a contractual arbitration clause in favor of arbitration"; "[t]he arbitration clause in this case encompasses 'any dispute' between the parties 'arising out of' or 'in connection with' the Agreement." This focus on scope suggests the court evaluated only the second step. The district court never determined whether VTHM and Wartsila had a valid agreement to arbitrate in the first place. If the district court had undertaken that determination it would have concluded that they did not, ending the inquiry at requirement one; the district court should not have reached requirement two.

The district court seems to have overlooked that there were two separate contracts mentioned in VTHM's claims. The Sales Contract between Vessel Management and Wartsila contained a presumably valid agreement to arbitrate. VTHM acknowledges that because its breach of warranty claim is derived from the Sales Contract between Vessel Management and Wartsila, it must arbitrate that claim. But there is no contract between VTHM and Wartsila that would compel VTHM to arbitrate its tortious interference claim. The district court's order never articulates a distinction between the two contracts. In fact, the district court references "the Arbitration Agreement at issue [10-1]," but that agreement is *not* between the two parties to the suit, Wartsila and VTHM. Rather, it is between Wartsila and third-party Vessel Management. This reference suggests that the district did not contemplate that there were two separate contracts at issue. The citation evidence, coupled with the order's

language, indicates that the court incorrectly assumed VTHM was the second party to the arbitration agreement, not Vessel Management.[**]

Ultimately, regardless of whether the district court correctly understood the nature of the contracts between the parties, Wartsila concedes that it has no valid agreement to arbitrate with VTHM. Thus, the first requirement of *Pennzoil* cannot be satisfied; VTHM cannot be compelled to arbitrate under general arbitration principles and the district court erred in so holding.

We decline to determine whether equitable estoppel compels arbitration at this point. Instead, we remand this case to the district court to determine whether direct benefits equitable estoppel applies, as Wartsila urges.

For the foregoing reasons, we REVERSE the district court's order and REMAND for further determination of whether equitable estoppel compels arbitration.

---

[**] There was one part of the district court's order that could be read to indicate that the court realized there were two separate contracts. The final page of the order states "the [c]ourt is of the view that Plaintiff's tortious interference claim 'arose out of or in connection with' the contract between Wartsila and Vessel Management." The district court correctly identifies the two parties to the Sales Contract containing the arbitration agreement. It is not clear, however, that the court realized that "the Plaintiff"—as it is referred throughout the order—is VTHM.