Charlotte Student Hous. DST v. Choate Constr. Co., 2019 NCBC 20.

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
18 CVS 5148

CHARLOTTE STUDENT HOUSING
DST; and CHARLOTTE STUDENT
HOUSING LEASECO, LLC,

       Plaintiffs,

v.

CHOATE CONSTRUCTION
COMPANY; DINO M. PAPPAS;
GEOSCIENCE GROUP, INC.;
MILLER ARCHITECTURE; THE
SANCTUARY AT CHARLOTTE,
LLC; TONY F. MILLER; and
VRETTOS PAPPAS CONSULTING
ENGINEERS, P.A.,

       Defendants.

**ORDER AND OPINION ON MOTIONS
TO COMPEL ARBITRATION,
MOTIONS TO STAY, AND MOTION
FOR PARTIAL RELIEF**

1. Plaintiffs are the current owner and landlord of a student housing complex. They have sued the original owner, the architect, the general contractor, and two subcontractors for a host of alleged design and construction defects. In an earlier decision ("2018 Opinion"), the Court agreed with two of these defendants that the claims asserted against them must be resolved in arbitration. The decision prompted disputes between Plaintiffs and the remaining defendants about whether the other pending claims should be stayed, should proceed in this Court, or should be sent to arbitration. In this Order and Opinion, the Court decides six follow-on motions: one by Plaintiffs asking the Court to reconsider part of its earlier decision; two more by Plaintiffs asking the Court to compel arbitration of the claims they have asserted against most of the remaining defendants; and three by those defendants asking the

Court to stay all claims asserted against them until the ordered arbitration is completed.

> *Katten Muchin Rosenman LLP, by Richard L. Farley, Jeffrey C. Grady, and Kelsey R. Panizzolo, for Plaintiffs Charlotte Student Housing DST and Charlotte Student Housing LeaseCo, L.L.C.*
>
> *Kilpatrick Townsend & Stockton LLP, by Elizabeth L. Winters, Brian G. Corgan, Hayley R. Ambler, and Daniel K. Johnson, for Defendant Choate Construction Company.*
>
> *Johnston Allison & Hord, P.A., by B. David Carson and Parker Moore, and Berman Fink Van Horn P.C., by Charles H. Van Horn, Lauren S. Frisch, and Thomas E. Austin, for Defendant The Sanctuary at Charlotte, LLC.*
>
> *Smith Moore Leatherwood LLP, by Jeffrey P. MacHarg, Matthew W. Krueger-Andes, and Alexandra J. Hirsh, for Defendants Dino M. Pappas and Vrettos Pappas Consulting Engineers, P.A.*
>
> *Hamilton Stephens Steele & Martin, PLLC, by Tracy T. James and Carmela Mastrianni, for Defendant Geoscience Group.*
>
> *Cranfill Sumner & Hartzog LLP, by John W. Ong and Meredith A. FitzGibbon, for Defendants Tony F. Miller and Miller Architecture.*

Conrad, Judge.

I.
BACKGROUND

2. The Court assumes some familiarity with the background of this case, as detailed in its 2018 Opinion. *See Charlotte Student Hous. DST v. Choate Constr. Co.*, 2018 NCBC LEXIS 88, at \*1–5 (N.C. Super. Ct. Aug. 24, 2018) (ECF No. 94). In short, the case centers on a student housing complex, known as Arcadia, that Plaintiffs purchased in 2015. (*See* Compl. ¶¶ 14, 36, ECF No. 3.) The complaint alleges that Arcadia suffers from pervasive defects: weak soil, water infiltration, settling

sidewalks, cracked building exteriors, and a flawed HVAC system resulting in widespread mold and mildew. (*See, e.g.*, Compl. ¶¶ 39–41.)

3.      Plaintiffs lay the blame on seven parties. They allege that the original owner, The Sanctuary at Charlotte, LLC ("Sanctuary"), knew about and covered up the mold and mildew problems before selling Arcadia. (*See* Compl. ¶¶ 28–35.) The general contractor, Choate Construction Company ("Choate"), allegedly conspired with Sanctuary in the cover-up and also breached its warranty. (*See* Compl. ¶¶ 129–32, 177–79.) Finally, Plaintiffs assert claims for professional negligence against the architect, Miller Architecture and Tony F. Miller ("Miller Defendants"); the HVAC subcontractor, Dino Pappas and Vrettos Pappas Consulting Engineers, P.A. ("Pappas Defendants"); and the geotechnical engineer, Geoscience Group ("Geoscience"). (*See* Compl. ¶¶ 138, 143–46, 153–56.)

4.      Shortly after this suit was filed, Choate and Geoscience moved to dismiss or stay the claims against them pending arbitration. (ECF Nos. 12, 40.) The Miller Defendants filed a similar motion but withdrew it days later. (ECF Nos. 45, 47.) In support of its motion, Choate pointed to a broad arbitration clause in its contract with Sanctuary to serve as general contractor for the Arcadia project. (Choate's Mem. in Supp. Mot. Dismiss 2, ECF No. 49 ["Choate's Mem. in Supp."].) Geoscience pointed to similar clauses in two of its own contracts with Sanctuary to perform the relevant engineering services. (Geoscience's Br. in Supp. Mot. Dismiss 3, 5, ECF No. 44 ["Geo.'s Br. in Supp."].) Both Choate and Geoscience argued that Plaintiffs, though not signatories to the arbitration clauses, were bound by them and required to

arbitrate the asserted claims. (Choate's Mem. in Supp. 15–17; Geo.'s Br. in Supp. 4–5.)

5. The Court agreed and in the 2018 Opinion granted both motions. *See Charlotte Student Hous.*, 2018 NCBC LEXIS 88, at *16–17. It is well settled that, in appropriate circumstances, "a nonsignatory can enforce, or be bound by, an arbitration provision within a contract executed by other parties." *Id.* at *7 (quoting *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GmbH*, 206 F.3d 411, 415 (4th Cir. 2000)). This includes circumstances giving rise to estoppel: "[a] nonsignatory is estopped from refusing to comply with an arbitration clause when it receives a direct benefit from a contract containing an arbitration clause." *Id.* at *11 (quoting *Int'l Paper*, 206 F.3d at 418).

6. The Court concluded that Plaintiffs were seeking a direct benefit from the contract between Sanctuary and Choate. Among other things, Plaintiffs' claim for breach of warranty rested on the allegation that Choate "did not perform its work in accordance with 'the plans and specifications' contained within" that contract. *Id.* at *12 (quoting Compl. ¶ 131). As a result, Plaintiffs' claim was "functionally the equivalent of enforcing the terms of the [contract] itself." *Id.* at *13. Because the claim could "'only be determined by reference to an agreement containing an arbitration clause,'" Plaintiffs were "estopped from repudiating the arbitration clause." *Id.* (quoting *Noble Drilling Servs. Inc. v. Certex USA, Inc.*, 620 F.3d 469, 474 (5th Cir. 2010)).

7.      The arbitration clause in Choate's contract with Sanctuary broadly covers all disputes "arising out of or relating to" the contract. *Id.* There was no dispute that, if estoppel applied, this language required arbitration of the claim for breach of warranty against Choate. *See id.* at *13–14. The Court also concluded that the arbitration clause was broad enough to cover the conspiracy claim. *See id.* at *14–15. As alleged, "Choate failed to build Arcadia's HVAC systems in accordance with the [contract's] plans and specifications, knew that its defective work caused mold and mildew problems, and then conspired with Sanctuary to conceal the defects." *Id.* at *14 (citing Compl. ¶¶ 101, 102, 104, 110, 131, 178, 179). The Court thus concluded that the conspiracy claim was a claim "relating to" the contract. *See id.* at *14–15.

8.      Turning to Geoscience's motion, the Court reached a similar conclusion. The professional negligence claim against Geoscience was "expressly grounded in the work" that was subject to Geoscience's contracts with Sanctuary, resting on allegations that "Geoscience failed to comply with the testing requirements, plans, and specifications for the construction project." *Id.* at *15. From these allegations, the Court concluded that Plaintiffs were seeking a direct benefit from the contract between Sanctuary and Geoscience and were estopped from repudiating the arbitration clause within it. *See id.* at *15.

9.      On these grounds, the Court stayed all claims asserted against Choate and Geoscience pending arbitration. *See id.* at *17. The determination did not address any claims asserted against the other defendants, many of whom had forecast their intent to seek a stay in the event the Court granted Choate or Geoscience's motion.

(*See* ECF Nos. 51, 66.) The Court required any motion to stay to be filed within fourteen days. *See id.* at \*18.

10. Each of the remaining defendants did so. Sanctuary, the Miller Defendants, and the Pappas Defendants filed separate motions to stay all claims asserted against them, largely on the grounds that these claims are intertwined with the claims subject to arbitration and that it would be more efficient to await the outcome of arbitration before proceeding in this Court. (ECF Nos. 96, 98, 100.)

11. Plaintiffs oppose all three motions and have responded with three of their own. Despite having opposed arbitration at first, Plaintiffs moved to compel arbitration of their claims against the Miller Defendants and the Pappas Defendants, arguing that the logic of the Court's 2018 Opinion applies equally to those parties. (ECF Nos. 102, 104.) Plaintiffs separately moved for partial reconsideration of the 2018 Opinion, limiting their argument to the Court's determination that the conspiracy claim against Choate was subject to arbitration. (ECF No. 107.)

12. All six motions have been fully briefed, and the Court held a hearing on January 9, 2019, at which all parties were represented by counsel. The motions are now ripe for determination.

## II.
## ANALYSIS

13. State and federal laws strongly favor the efficient resolution of civil disputes through arbitration.[1] The rules and procedures that govern arbitration-related

---

[1] The parties agreed at the hearing that the Federal Arbitration Act governs each of the arbitration clauses at issue because they are contained in contracts involving interstate

motions bend toward expedition, mandating summary disposition and narrowing the scope of court review. *See, e.g.*, 9 U.S.C. § 4; N.C. Gen. Stat. § 1-569.7(a)(2). Indeed, courts routinely sweep aside barriers that might otherwise sap arbitration of its promise as a faster and less expensive alternative to litigation. *See, e.g., Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 531 (2019) (criticizing rules that "spark collateral litigation").

14. No dispute-resolution system is perfect, though, and rules designed to promote efficiency in the broad run of cases sometimes lead to inefficient results in particular cases. In multi-party or multi-claim litigation, for example, it is not uncommon for some claims to be arbitrable and others not. When that happens, the arbitrable claims must go to arbitration, but the non-arbitrable claims stay put. This often leads to a dispute about whether to proceed with litigation of the non-arbitrable claims or instead to shelve them pending the completion of arbitration. Either way, the result is inefficient, piecemeal litigation—a prospect generally abhorred but occasionally required to give effect to an arbitration agreement. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 (1983).

15. This is the result Plaintiffs hope to avoid. Now that the Court has determined, over Plaintiffs' opposition, that the claims against Choate and Geoscience must be resolved in arbitration, Plaintiffs seek to shift as many of their claims as possible to the arbitral forum. To do so, Plaintiffs have moved to compel the Miller and Pappas Defendants to arbitrate the claims asserted against them. It

---

commerce. *See* 9 U.S.C. § 2; *see also Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273–81 (1995).

is an unusual demand—plaintiffs typically do not seek to compel arbitration of their own claims. It also presents difficult questions—for example, when, if ever, can a plaintiff assert estoppel as a basis to compel a defendant to arbitrate the claims asserted against it? The Miller and Pappas Defendants oppose arbitration of the claims asserted against them, arguing that the claims should remain before the Court and be stayed until the arbitration with Choate and Geoscience concludes.

16. First, though, the Court addresses Plaintiffs' motion for partial reconsideration of the 2018 Opinion. That motion raises a threshold question: whether the Court should rescind its conclusion that the conspiracy claim against Choate is subject to arbitration. The answer to this question has a direct bearing on whether related claims against Sanctuary should be stayed or should proceed without further delay.

A. Motion for Reconsideration

17. Interlocutory orders are "subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." N.C. R. Civ. P. 54(b).[2] Because North Carolina courts have not articulated a standard for reconsideration under Rule 54(b), this Court has regularly sought guidance from analogous federal cases. *See, e.g., Bohn v. Black*, 2018 NCBC LEXIS 50, at \*7 (N.C.

---

[2] Plaintiffs mistakenly based their motion on North Carolina Rule of Civil Procedure 60(b)(6). (*See* Pls.' Br. in Supp. Mot. Partial Relief 5, ECF No. 108 ["Br. in Supp. Mot. Partial Relief"].) Rule 60(b)(6) applies only to "relieve a party . . . from a final judgment," not interlocutory orders such as the 2018 Opinion. N.C. R. Civ. P. 60(b); *see also Sink v. Easter*, 288 N.C. 183, 196, 217 S.E.2d 532, 540 (1975). In their reply brief, Plaintiffs acknowledged that the Court should instead apply Rule 54(b), which does apply to interlocutory orders. (*See* Pls.' Reply to Choate's Opp'n 2–3, ECF No. 122 ["Reply in Supp. Mot. Partial Relief"].)

Super. Ct. May 16, 2018); *W4 Farms, Inc. v. Tyson Farms, Inc.*, 2017 NCBC LEXIS 99, at *4–5 (N.C. Super. Ct. Oct. 19, 2017). Generally speaking, there are three permissible grounds for reconsideration: "(1) the discovery of new evidence, (2) an intervening development or change in the controlling law, or (3) the need to correct a clear error or prevent manifest injustice." *Bohn*, 2018 NCBC LEXIS 50, at *7 (quoting *Pender v. Bank of Am. Corp.*, 2011 U.S. Dist. LEXIS 1838, at *7 (W.D.N.C. Jan. 7, 2011)). These circumstances "rarely arise." *DirecTV, Inc. v. Hart,* 366 F. Supp. 2d 315, 317 (E.D.N.C. 2004) (citation and quotation marks omitted).

18. Plaintiffs do not identify any new evidence or legal developments that would require revisiting the Court's conclusion that the conspiracy claim against Choate is subject to arbitration. Instead, they reiterate the argument that they offered in opposition to Choate's motion to stay. (*Compare* Br. in Supp. Mot. Partial Relief 5–6*, with* Pls.' Resp. Opp'n Choate's Mot. Dismiss 22–23, ECF No. 62.) In short, Plaintiffs narrowly interpret the arbitration clause in the contract between Choate and Sanctuary to cover construction-related disputes but to exclude all others. (*See* Reply in Supp. Mot. Partial Relief 6.) The conspiracy claim, they contend, is not construction-related—and therefore not arbitrable—because it concerns only the concealment of mold and mildew problems. (Br. in Supp. Mot. Partial Relief 5–6.)

19. This is not a sound basis for seeking reconsideration. The purpose of a motion to reconsider "is not to present a better and more compelling argument that the party could have presented in the original briefs." *Madison River Mgmt. Co. v. Bus. Mgmt. Software Corp.*, 402 F. Supp. 2d 617, 619 (M.D.N.C. 2005). Simply put,

the Court has already addressed and resolved these arguments, and it would be inappropriate to grant relief "where the motion merely asks the [C]ourt to rethink what the Court had already thought through—rightly or wrongly." *DirecTV, Inc.*, 366 F. Supp. 2d at 317 (citation and quotation marks omitted).

20.    Plaintiffs' argument is also unpersuasive. The contract between Choate and Sanctuary requires arbitration of all disputes "arising out of or relating to" that contract. (Choate Mem. in Supp. Mot. Dismiss Ex. A, ECF No. 49.1 General Conditions §§ 15.1.1, 15.4.1.) As courts have routinely held, this facially broad language is "capable of an expansive reach." *Am. Recovery Corp. v. Computerized Thermal Imaging*, 96 F.3d 88, 93 (4th Cir. 1996) (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 398 (1967)); *see also Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000). In fact, it "contain[s] the broadest possible terms." *Fairchild v. Nat'l Home Ins. Co.*, 17 F. App'x 631, 633 (9th Cir. 2001). The clause therefore "does not limit arbitration to the literal interpretation or performance of the contract." *J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.*, 863 F.2d 315, 321 (4th Cir. 1988); *see also Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999).

21.    For that reason, the question is not whether Plaintiffs' conspiracy claim is construction-related; rather, the question is whether the claim has a significant relationship to the contract between Choate and Sanctuary. It does. The complaint alleges that Choate's faulty workmanship—in violation of the contract's plans and specifications—caused, contributed to, or exacerbated the moisture and humidity

issues at Arcadia. (*See, e.g.*, Compl. ¶¶ 39–42, 97, 100–05, 110.) The conspiracy claim rests on the alleged cover-up that followed. Plaintiffs allege that "Sanctuary and Choate agreed to actively conceal the extent of the moisture and humidity issues" at Arcadia. (Compl. ¶ 178.) In other words, the civil conspiracy claim alleges that Choate and Sanctuary conspired to commit fraud to cover up Choate's failure to fulfill its contractual duties as the project's general contractor. This conspiracy, as alleged, bears a significant relationship to the contract between Choate and Sanctuary and is therefore a dispute "relating to" that contract, making it subject to the contract's broad arbitration clause.[3]

22. The motion for reconsideration is therefore denied.

### B. Sanctuary's Motion to Stay

23. The Court turns next to Sanctuary's motion to stay. Sanctuary is Choate's alleged co-conspirator, and all the claims against Sanctuary relate to the alleged effort to hide Arcadia's mold and mildew problems. (*See* Compl. ¶¶ 161–62, 172, 178–79.) Sanctuary asks the Court to stay these claims on the ground that they are "intertwined" with the conspiracy claim against Choate, such that proceeding at the same time in two venues would create the potential for inconsistent results. (Sanctuary Mem. in Supp. Mot. Stay 2, ECF No. 97 ["Sanctuary Mem. in Supp."].)

---

[3] At the hearing, Plaintiffs' counsel reported that they have filed a new lawsuit against Arcadia's former property manager alleging involvement in the same conspiracy. *See Charlotte Student Hous. DST v. Campus Advantage, Inc.*, 18-CVS-20478. Plaintiffs suggested, for reasons that are unclear, that this new lawsuit shows the conspiracy claim against Choate is not subject to arbitration. Whether Plaintiffs may pursue a claim against a third party based on similar allegations has no bearing on the scope of the arbitration clause in the contract between Choate and Sanctuary. The Court has no opinion on the arbitration-related rights of Campus Advantage, Inc., a non-party that has not appeared in this matter.

24.    Plaintiffs oppose the stay for two reasons.  They contend, first, that a stay would not promote judicial economy.  (Pls.' Resp. Opp'n Sanctuary Mot. Stay 4–5, ECF No. 111 ["Opp'n Sanctuary Mot. Stay"].)  Next, they argue that a stay would be inequitable because it would delay Plaintiffs' ability to pursue their claims against the "primary fraudfeasor."  (Opp'n Sanctuary Mot. Stay 6.)

25.    By statute, the Court must stay proceedings involving one or more claims subject to arbitration.  *See* N.C. Gen. Stat. § 1-569.7(g).  If an arbitrable claim is severable from other, non-arbitrable claims in the same action, the Court retains the discretion to limit the stay to the arbitrable claims.  *See id.*; *see also Sloan Fin. Grp., Inc. v. Beckett*, 159 N.C. App. 470, 485, 583 S.E.2d 325, 334 (2003); *Gaylor, Inc. v. Vizor, LLC*, 2015 NCBC LEXIS 102, at *21–22 (N.C. Super. Ct. Oct. 30, 2015).

26.    It is clear that a stay of the claims against Sanctuary would promote judicial economy and reduce the potential for inconsistent outcomes.  Plaintiffs' claims against Sanctuary and Choate arise from the same allegedly wrongful conduct: conspiring to conceal mold and mildew problems throughout Arcadia.  (*See* Compl. ¶¶ 31–34, 40, 97, 102, 176–79.)  In fact, Plaintiffs allege that "all affirmative acts" were actually performed by Choate and its employees.  (Compl. ¶ 177.)  Allowing litigation to proceed against Sanctuary while the same disputes are being arbitrated would be duplicative and present a real and substantial risk of inconsistent outcomes. *See Apex Tool Grp., LLC v. Ingersoll-Rand Co.*, 2013 NCBC LEXIS 24, at *12–14 (N.C. Super. Ct. May 14, 2013).  A stay pending arbitration would reduce that risk

while serving the interest of judicial economy, and the Court disagrees with Plaintiffs' argument to the contrary.

27. Plaintiffs' argument that the equities weigh against a stay is also unpersuasive. Plaintiffs object, for example, that a stay will delay their pursuit of relief from Sanctuary. That is true. But it is also true that Plaintiffs did not file this suit until March 2018 despite being aware of humidity and moisture problems as early as February 2016. (*See* Compl. ¶ 39.) It may have been reasonable for Plaintiffs not to file suit immediately, but their unhurried approach blunts any concerns about arbitration-related delay.

28. Plaintiffs also note that Sanctuary is now dissolved and point to Sanctuary's "dissolution obligations" to maintain certain assets. (Opp'n Sanctuary Mot. Stay 7.) This appears to be a reference, at least in part, to a provision in the purchase agreement between Sanctuary and Plaintiffs' predecessor, in which Sanctuary agreed to "maintain a minimum net worth during the Warranty Period, and thereafter until any claim filed during the Warranty Period is resolved, of $1,000,000.00." (Sanctuary Answer Ex. B § 3.7(c), ECF No. 42.2.) The purchase agreement defines the warranty period as nine months from the agreement's effective date. (Sanctuary Answer Ex. B § 3.7(c).) Plaintiffs suggest that they need to conduct discovery to confirm that Sanctuary did so and to know whether Sanctuary fraudulently transferred any funds. (*See* Opp'n Sanctuary Mot. Stay 7.)

29. This argument misses the mark. For one thing, Plaintiffs have not offered anything more than speculation that Sanctuary failed to comply with its obligations.

As best the Court can tell, Plaintiffs believe that discovery might reveal facts that would support additional claims. The speculative assumption that Plaintiffs might have additional, but as-yet-unknown, claims is not a compelling reason to deny a stay. Furthermore, it is far from clear whether the contractual provision was ever triggered. Sanctuary argues that its obligations to maintain assets arose only if Plaintiffs filed a claim for breach of a representation or warranty under the contract within the nine-month warranty period. (*See* Reply in Supp. Sanctuary Mot. Stay 7–8, ECF No. 115.) No such claim appears to have been filed, though the Court need not reach any firm conclusions about that now. It suffices to observe that the current record provides no equitable basis to deny a stay.

30. Because it would be inefficient to litigate the claims against Choate and Sanctuary in two forums at the same time and because Plaintiffs have not shown any substantial inequity, the Court stays the claims against Sanctuary pending the conclusion of Plaintiffs' arbitration with Choate and Geoscience.

### C. Miller Defendants

31. The professional negligence claim against the Miller Defendants raises a different set of issues. The Miller Defendants served as architect on the Arcadia project. Plaintiffs attribute many of Arcadia's alleged flaws to the Miller Defendants' failure to properly coordinate and oversee the design of the HVAC system and the community pool, along with other structural elements of the Arcadia buildings. (Compl. ¶¶ 142–48.) The Miller Defendants contend that these allegations are tied closely to the allegations against Choate and Geoscience, and they seek to stay the

claim so as to promote judicial economy and prevent inconsistent results. (Miller Mem. in Supp. Mot. Stay 1, ECF No. 101.)

32. Plaintiffs, on the other hand, now seek to compel arbitration of the claim. (*See* Pls.' Br. in Supp. Mot. Compel Miller 5, ECF No. 103 ["Br. in Supp. Compel Miller"].) There is no arbitration agreement between Plaintiffs and the Miller Defendants, but the contract between Sanctuary and the Miller Defendants requires arbitration for "any claim, dispute or other matter in question arising out of or related to this Agreement." (Pls.' Br. in Supp. Mot. Compel Miller Ex. 1 § 9.3.1, ECF No. 103.1 ["Miller Contract"].) Plaintiffs argue that they are entitled to enforce this arbitration clause, though not signatories to it, under the logic of the Court's 2018 Opinion. (Br. in Supp. Compel Miller 5–6.)

33. The arbitration demand is unusual. A plaintiff will sometimes initiate litigation for the purpose of obtaining a court order compelling arbitration. *See, e.g.*, *Martin & Jones, PLLC v. Olson*, 2017 NCBC LEXIS 87, at *1 (N.C. Super. Ct. Sept. 25, 2017); *Local 1764, Amalgamated, Transit Union v. WMATA*, 2015 U.S. Dist. LEXIS 15664, at *15 (D. Md. Feb. 10, 2015); *Galloway & Assocs. PLLC v. Fredeking & Fredeking Law Offices, LC*, 2010 U.S. Dist. LEXIS 108175, at *6 (S.D. W. Va. Oct. 8, 2010). But it is rare for a plaintiff to assert claims intended for judicial resolution only then to have a change of heart and later seek to have those claims sent to arbitration. *See MortgageAmerica, Inc. v. Davis*, 2013 U.S. Dist. LEXIS 45144, at *8–9 (N.D. Ala. Mar. 29, 2013) (noting court was "unable to find a case similar to the instant one in which it is the *plaintiff* who seeks both to sue on substantive theories

and to compel arbitration"). It is perhaps even rarer for a plaintiff to request arbitration after first opposing it, as Plaintiffs have done here. In fact, the Court has not found, and neither side has cited, any case in which a plaintiff unsuccessfully opposed arbitration of some claims and then afterward sought to compel arbitration of other pending claims. Plaintiffs assert that they have done so here for the purpose of trying to consolidate their claims in a single forum.

34. One question this posture raises is whether Plaintiffs waived their right to seek arbitration, assuming that right exists. (*See* Miller Resp. Mot. Compel 4–5, ECF No. 113.) The acts of initiating litigation and opposing arbitration could certainly be seen that way, though courts have shied away from bright-line rules in this area. *See BOSCA, Inc. v. Bd. of Cty. Comm'rs*, 853 F.3d 1165, 1171–74 (10th Cir. 2017). The Court need not decide whether a waiver occurred, though, because the motion to compel must be denied for a different reason.

35. The 2018 Opinion does not, as Plaintiffs contend, support permitting Plaintiffs to enforce the arbitration agreement between Sanctuary and the Miller Defendants. In that Opinion, the Court identified some of the circumstances in which "a nonsignatory can enforce, or be bound by, an arbitration provision within a contract executed by other parties." *Int'l Paper*, 206 F.3d at 416–17; *see also Restoration Pres. Masonry Inc. v. Grove Eur. Ltd.*, 325 F.3d 54, 62 n.2 (1st Cir. 2003). The Court applied principles of estoppel to hold that Plaintiffs were bound by the arbitration clauses in Sanctuary's contracts with Choate and Geoscience. By asserting claims that could only be resolved by reference to those contracts, Plaintiffs

had sought or received a direct benefit from the contracts and were estopped from repudiating their arbitration clauses. *See Charlotte Student Hous.*, 2018 NCBC LEXIS 88, at \*12–13, 15–16.

36. Plaintiffs disagreed with the Court's reasoning, but they now argue that it permits them, as nonsignatories, to enforce the arbitration clause in the contract between the Miller Defendants and Sanctuary. It does not. Equitable estoppel is a defensive theory. *See Interested Underwriters at Lloyd's v. M/T San Sebastian*, 508 F. Supp. 2d 1243, 1253 (N.D. Ga. 2007). It "works to prevent the inequitable result that would occur if a party was able to use a contract as both a sword and shield." *Pershing LLC v. Bevis*, 2014 U.S. Dist. LEXIS 62847, at \*12 (M.D. La. May 7, 2014). The reason that Plaintiffs were bound by Sanctuary's contracts with Choate and Geoscience was that they had brought claims for relief grounded in those contracts.

37. Unlike Plaintiffs, though, the Miller Defendants have not asserted claims that must be resolved by reference to a contract containing an arbitration clause. Indeed, the Miller Defendants have not asserted any claims at all. They are part of this lawsuit only by virtue of having been sued. Plaintiffs have not identified any legal principle that would support the use of estoppel to compel a party to arbitrate claims asserted *against* it. To the contrary, "the *assertion* of claims related to a contract" is essential and "a necessary element" of equitable estoppel. *Interested Underwriters*, 508 F. Supp. 2d at 1253 (emphasis added). When, as here, the party opposing arbitration has not asserted claims grounded in the contract, "[e]quitable estoppel simply does not apply." *Id.*

38.     Plaintiffs point out that the Miller Defendants initially filed a motion to compel arbitration before withdrawing it. (*See* Br. in Supp. Compel Miller 6.)  The motion was not briefed, argued, or decided, though, and the Court sees no reason that the Miller Defendants, having thought better of the idea, could not retract their arbitration request, especially when Plaintiffs were put to no trouble or expense from the aborted filing.

39.     In the absence of a basis to permit enforcement of an arbitration clause by a nonsignatory, the usual rules apply.  "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs. v. Communs. Workers of Am.*, 475 U.S. 643, 648 (1986). The Miller Defendants have not agreed to submit the claim asserted against them to arbitration.  Therefore, Plaintiffs' motion to compel is denied.

40.     That leaves the Miller Defendants' motion to stay.  The crux of Plaintiffs' professional negligence claim against the Miller Defendants is that they failed to properly oversee and coordinate design services on the Arcadia project related to the engineering services, the HVAC system, and various structural elements.  (Compl. ¶¶ 143–47.)  As a result, there is substantial overlap between the claim against the Miller Defendants and the claims against both Choate and Geoscience.  For instance, the complaint alleges that the Miller Defendants contributed to damage to the Arcadia clubhouse and pool through their failure to properly oversee Geoscience's work.  (Compl. ¶¶ 73–75.)  Plaintiffs also claim that the poor performance of either Geoscience, Choate, or the Miller Defendants resulted in improper fill soil that caused

damage to the complex pool. (Compl. ¶¶ 62, 76.) And the complaint alleges that the defects in the HVAC system are attributable to Choate, the Pappas Defendants, and the Miller Defendants, resulting in pervasive mold and mildew. (Compl. ¶¶ 100–04, 110.)

41. Plaintiffs contend that other alleged wrongs by the Miller Defendants have nothing to do with the allegations against either Choate or Geoscience. (Pls.' Resp. Opp'n Miller Mot. Stay 8, ECF No. 112.) They point to design defects such as a faulty paver system, steep roof pitches, poorly ventilated floor systems, and shoddy waterproofing. (*See* Compl. ¶ 116.) Plaintiffs argue that these issues are attributable to the negligence of the Miller Defendants alone, but that is not clear from the complaint. Immediately after identifying these defects, Plaintiffs fault the Miller Defendants for their coordination and oversight of engineering design services, "including design services performed by Geoscience Group." (Compl. ¶ 117; *see also* Compl. ¶ 118.) In addition, the defects appear to relate to structural and moisture problems that are central to the claims against Choate and Geoscience. (*Compare* Compl. ¶ 116, *with* Compl. ¶¶ 52, 96.)

42. Having carefully considered these issues, the Court concludes that a stay is appropriate. Moving forward with litigation of the claims against the Miller Defendants in parallel with the arbitration of the claims against Choate and Geoscience would be duplicative and risk inconsistent results. A stay, on the other hand, would promote judicial economy and prevent potential inconsistency. *See Am. Home Assurance Co. v. Vecco Concrete Constr. Co.*, 629 F.2d 961, 964 (4th Cir. 1980).

The Court therefore grants the motion to stay the claims against the Miller Defendants.

## D. Pappas Defendants

43. The claim against the Pappas Defendants is also subject to cross-motions. The Pappas Defendants provided Arcadia's engineering services, including the mechanical system designs for the project. (*See* Compl. ¶¶ 18–19.) Plaintiffs claim that the Pappas Defendants were professionally negligent in providing these services, and that Arcadia's HVAC system contained multiple material defects that led to excess humidity, mold, and mildew in the apartments as a result of the faulty design. (*See* Compl. ¶¶ 138, 139.) The Pappas Defendants seek to stay the claim, and Plaintiffs argue that it must be resolved in arbitration.

44. Plaintiffs' motion to compel arbitration must be denied for all the reasons discussed above. Equitable estoppel is a defensive doctrine, not an offensive doctrine. The Pappas Defendants have not asserted any claims or counterclaims, and estoppel therefore does not apply. *See Interested Underwriters*, 508 F. Supp. 2d at 1253.

45. That alone is a sufficient basis to deny the motion to compel arbitration. It also bears noting, though, that the Pappas Defendants are not signatories to a contract containing an arbitration clause. Plaintiffs' arbitration request is based instead on the arbitration clause in the contract between Sanctuary and the Miller Defendants. (Pls.' Br. in Supp. Mot. Compel Pappas 6–7, ECF No. 105.) In other words, Plaintiffs seek to compel the Pappas Defendants to arbitrate based on a clause in a contract that *neither* party has signed. But Plaintiffs have not cited any law

permitting one nonsignatory to compel another to arbitration.  That, too, is a reason to deny the motion to compel.

46.  As a result, the Court must determine whether the non-arbitrable claim against the Pappas Defendants should be stayed pending the outcome of the arbitration of claims against Choate and Geoscience.  The claim against the Pappas Defendants is entirely grounded in the HVAC system design.  (Compl. ¶¶ 138–40.) Plaintiffs allege that both the Pappas Defendants' design and Choate's installation contributed to Arcadia's defective HVAC system.  (Compl. ¶¶ 100–02, 104, 110.)  As a result, the Pappas Defendants argue that the claims against them will be affected, and possibly resolved, by the arbitration between Plaintiffs and Choate.  (Pappas Mem. in Supp. Mot. Stay 4–6, ECF No. 99.)

47.  Plaintiffs dispute this.  They argue that the claims against Choate as to HVAC-related issues are limited to Choate's failure to perform its contractual obligations, but that the claim against the Pappas Defendants is based on the design of the system.  (*See* Pls.' Resp. Opp'n Pappas Mot. Stay 6–8, ECF No. 110 ["Opp'n Pappas Mot. Stay"].)  As a result, in Plaintiffs' view, the arbitrator's resolution of the claims against Choate would have no effect on the claim against the Pappas Defendants.  (Opp'n Pappas Mot. Stay 7–8.)

48.  Although there are distinctions between the claims asserted against Choate and the Pappas Defendants, the Court concludes that there is sufficient overlap to warrant a stay.  Both sets of claims stem from allegations of excessive mold and mildew.  (Compl. ¶¶ 96–102.)  In addition, the complaint seeks damages for the

redesign and retrofit of the HVAC system from both Choate and the Pappas Defendants, along with the Miller Defendants.  (Compl. ¶ 110.)

49.    It appears likely that a finding by the arbitrator that Choate owes damages to Plaintiffs for HVAC-related issues would affect the claim against the Pappas Defendants.  The arbitration proceedings against Choate will likely streamline the eventual litigation against the Pappas Defendants by answering important fact questions.  *See CIP Constr. Co. v. W. Sur. Co.*, 2018 U.S. Dist. LEXIS 122664, at *25–27 (M.D.N.C. July 20, 2018).  At a minimum, a stay would reduce the potential for inconsistent results and avoid the potential for confusion that would result from litigating Arcadia's HVAC defects in two forums at one time.  *See, e.g.*, *Kolman v. GM Fin. Co.*, 2018 U.S. Dist. LEXIS 212646, at *6–7 (E.D.N.C. Dec. 18, 2018).  These considerations outweigh any potential inequity that may result from delaying Plaintiffs' pursuit of these claims.  The Court therefore grants the motion to stay the claim asserted against the Pappas Defendants.

### E.  Remaining Issues

50.    One final issue remains.  It appears that Plaintiffs have not yet initiated the arbitration against Choate and Geoscience.  At the hearing, counsel for Plaintiffs suggested that, if their motions to compel were denied, the Court should allow them to choose whether to proceed with litigation before initiating the arbitration.

51.    The Court concludes that this approach would be inconsistent with the statutory scheme.  The relevant state and federal statutes contemplate staying litigation in favor of arbitration, not the other way around.  *See* 9 U.S.C. § 3; N.C.

Gen. Stat. § 1-569.7(f), (g). One reason for this is that arbitration would presumably lead to a faster, less expensive resolution of certain issues, thus narrowing the scope of later litigation. *See Sholar Bus. Assocs., Inc. v. Davis*, 138 N.C. App. 298, 301, 531 S.E.2d 236, 239 (2000) (noting as included among the advantages of arbitration "reduction of court congestion, speed, economy, [and] finality"). Those benefits would be lost if litigation of non-arbitrable claims took precedence, and a litigation-first approach could interfere with the arbitration panel's ability to perform its work at a later time.

52. It is therefore appropriate to stay the claims asserted against Sanctuary, the Miller Defendants, and the Pappas Defendants pending the outcome of Plaintiffs' arbitration with Choate and Geoscience. If Plaintiffs finally resolve their claims against Choate and Geoscience in some other fashion, thereby mooting or preempting the ordered arbitration, then it would be appropriate to revisit the stay at that time.

## III.
## CONCLUSION

53. For these reasons, the Court **DENIES** Plaintiffs' motion for partial relief and the motions to compel arbitration of the claims asserted against the Miller and Pappas Defendants. The Court also **GRANTS** the motions to stay filed by Sanctuary, the Miller Defendants, and the Pappas Defendants.

54. Plaintiffs' claims against Sanctuary, the Miller Defendants, and the Pappas Defendants are **STAYED** pending the outcome of the arbitration of the claims asserted against Choate and Geoscience.

**SO ORDERED**, this the 26th day of March, 2019.

/s/ Adam M. Conrad
Adam M. Conrad
Special Superior Court Judge
  for Complex Business Cases